1
2
3
4
5
6
7
8
9
10              UNITED STATES DISTRICT COURT

11             EASTERN DISTRICT OF CALIFORNIA

12
                      ----oo0oo----
13
     DEBORAH HENSON,
14
              Plaintiff,
15                                      NO. CIV. 05-1099 FCD KJM
          v.
16                                      MEMORANDUM AND ORDER
     LASSEN COUNTY, et al.,
17
              Defendants.
18
     _____/
19

20                    ----oo0oo----

21      This matter comes before the court on defendants'[1] motions to

22  dismiss plaintiff Deborah Henson's second amended complaint

23  pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]  In

24  addition, plaintiff moves to amend her second amended complaint

25  _____

26        [1]    Defendants filed four separate motions to dismiss. Due
    to the overlapping facts and issues presented by these motions,
27  the court addresses all defendants' motions together.

28        [2]    All further references to a "Rule" are to the Federal
    Rules of Civil Procedure.

                              1

1   pursuant to Rule 15(a).  For the reasons set forth below,

2   defendants' motions are GRANTED in part and DENIED in part, and

3   plaintiff's motion is GRANTED.[3]

**BACKGROUND**

5       In April of 2003, plaintiff submitted her resume to the

6   California Merit Systems Board for consideration for the position

7   of supervisor or director of a Child Protective Services ("CPS")

8   division.  (Pl.'s Second Am. Compl., filed August 2, 2005, at ¶

9   15).  Thereafter, plaintiff was contacted by defendant Crosby to

10  interview for the position of CPS Supervisor in defendant Lassen

11  County ("County").  (Id. at ¶ 16).  After plaintiff interviewed

12  for the position, she was offered the job by defendant Crosby.

13  (Id. at ¶¶ 17-18).  Before accepting the position, plaintiff

14  informed defendant Crosby that she was in remission from

15  panic/anxiety disorder and that such condition could recur if

16  more than ordinary levels of stress were involved in her position

17  at CPS.  (Id. at ¶ 18).

18      Plaintiff commenced employment on May 12, 2003, relying on

19  defendant Crosby's assurances that CPS was in good order and

20  provided health insurance benefits to its managerial employees

21  while on disability leave.  (Id. at ¶¶ 24, 25, 29).  However,

22  plaintiff later learned that CPS was subject to a grand jury

23  investigation and was in a state of non-compliance with the

24  California Department of Social Services.  (Id. at ¶¶ 20, 32).

25  This was not disclosed to plaintiff during her interview process;

26  rather defendants Crosby and Margolies intentionally kept this

27

28      [3] Because oral argument will not be of material assistance,
    the court orders this matter submitted on the briefs.  E.D. Cal.
    Local Rule 78-230(h).

1  information from plaintiff.  (Id. at ¶¶ 21-24).  Plaintiff also

2  learned that CPS was understaffed by more than half of its

3  required full-time employees, which dictated that plaintiff work

4  between 70 and 80 hours per week.  (Id. at ¶¶ 30-31).

5      Plaintiff was promoted to Director of CPS in November 2003,

6  at which time she was informed that, as a Director, she was

7  subject to termination only for cause.  (Id. at ¶¶ 33-34).

8  Shortly after she was promoted, a female-on-female sexual

9  harassment complaint was lodged against plaintiff. (Id. at ¶ 35).

10 During this time, plaintiff became the subject of sexually-

11 orientated slurs by members of CPS staff.  (Id. at ¶ 36).  In

12 early January 2004, plaintiff demanded that action be taken

13 regarding the allegedly false sexual harassment claim filed

14 against her.  (Id. at ¶ 40).  Although this allegation was

15 recanted, no action was taken to remedy such accusations or clear

16 plaintiff's name.  (Id. at ¶¶ 41-44).  In addition, these

17 allegations were investigated by Jim Jackson in March and April

18 2004.  (Id. at ¶ 53).  Mr. Jackson found that plaintiff was

19 injured by the false allegations and that disciplinary action

20 should be taken against the complainant.  (Id.)  However, no

21 action was taken in response to Mr. Jackson's report.  (Id. at ¶

22 54).

23      In early 2004, plaintiff sought to hire a CPS social worker.

24 (Id. at ¶ 45).  After plaintiff refused to hire defendant

25 Mannel's wife because she did not apply for the position through

26 the proper channels, plaintiff offered the position to Bill

27 Snitkin.  (Id. at ¶¶ 38-39, 45).  Defendant Margolies directed

28 plaintiff to rescind the job offer to Mr. Snitkin, or in the

1 │ alternative, prepare for his termination by "starting a paper
2 │ trail," because Mr. Snitkin was HIV positive. (Id. at ¶¶ 46).

3 │     In March 2004, plaintiff sought medical care for anxiety
4 │ induced chest pains after defendants Whiteman and Mannel were
5 │ abusive to plaintiff in connection with plaintiff's second
6 │ refusal to hire defendant Mannel's wife. (Id. at ¶ 51).
7 │ Thereafter, plaintiff believes that defendants Whiteman, Mannel,
8 │ and others attempted to solicit negative information about
9 │ plaintiff, which may have resulted in the filing of a second
10 │ female-on-female sexual harassment complaint against plaintiff.
11 │ (Id. at ¶¶ 51-52, 55). Again, the complaint was later recanted.
12 │ (Id. at ¶ 58). Plaintiff believes that defendants Whiteman,
13 │ Chapman, and possibly Bixby, met with Woody Morgan, managing
14 │ editor of the Lassen County News. (Id. at ¶ 56). Plaintiff also
15 │ believes that these defendants made defamatory statements and
16 │ provided false and misleading information to Mr. Morgan regarding
17 │ plaintiff's professionalism and management of CPS. (Id. at ¶¶
18 │ 56-57). Thereafter, plaintiff was "shocked and humiliated" by
19 │ the call for plaintiff's termination in Mr. Morgan's article
20 │ published in the Lassen County News on May 11, 2004. (Id. at ¶¶
21 │ 59-60).

22 │     Plaintiff believes that, as a result of her complaints
23 │ regarding the allegedly false sexual harassment claims, her
24 │ refusal to hire defendant Mannel's wife, her refusal to rescind
25 │ the job offer to Mr. Snitkin, and her refusal to engage in
26 │ discriminatory conduct toward Mr. Snitkin, defendants Whiteman,
27 │ Chapman, Mannel, and others conspired to create intolerable
28 │ working conditions and to interfere with her civil rights so as

1  to cause her to quit her job or take a disability leave.  (Id. at

2  ¶¶ 47-50).

3      On June 1, 2004, defendant Bixby informed plaintiff by

4  memorandum that he was placing the operations of CPS under the

5  control of defendant Mannel.  (Id. at ¶ 61).  On that same date,

6  plaintiff began a medical leave as a result of work-related

7  stress.  (Id. at ¶ 62).  Subsequently, plaintiff sought the care

8  of a psychiatrist, who diagnosed plaintiff as suffering from post

9  traumatic stress disorder.  (Id. at ¶ 63).  As a result of her

10 mental and emotional condition, plaintiff has been unable to seek

11 suitable re-employment.  (Id. at ¶ 66).

12     After plaintiff took medical leave, defendant Bixby

13 demanded, by letter on June 15, 2004, that plaintiff refrain from

14 contacting any member of the staff at CPS.  (Id. at ¶ 64).  This

15 action effectively ended plaintiff's authority over CPS.  (Id.)

16 In November 2004, plaintiff received a letter from Ronald

17 Vossler, Lassen County Human Resources Director, notifying

18 plaintiff that her health care benefits had been discontinued

19 effective mid-August 2004.  (Id. at ¶ 68 and Ex. 14).

20     Plaintiff filed a claim for damages with the County on

21 December 10, 2004.  (Id. at ¶ 70).  Plaintiff's claim alleged

22 that plaintiff was wrongfully terminated on December 1, 2004.

23 (Id. at Ex. 15).  Plaintiff's claim also alleged that plaintiff

24 was subjected to a hostile work environment, which caused her to

25 have an emotional breakdown and to suffer from post traumatic

26 stress disorder.  (Id.)  In addition, plaintiff's claim included

27 allegations of malicious acts by County officials, slander and

28 retaliation for whistle blowing.  (Id.)  Plaintiff alleged that

1  John Kettleson, all Supervisors of Lassen County, William Bixby,

2  Margaret Crosby, and others caused her injuries.  (Id.)  The

3  County denied plaintiff's claim on January 11, 2005.  (Id. at ¶

4  71).

5      Subsequently, plaintiff filed a charge of discrimination

6  with the California Department of Fair Employment and Housing

7  ("DFEH") on June 22, 2005.  (Id. at ¶ 72).  The DFEH issued a

8  right-to-sue notice on June 27, 2005.  (Id. at ¶ 73).  Plaintiff

9  then filed a charge of discrimination with the Equal Employment

10 Opportunity Commission ("EEOC") on July 12, 2005.  (Id. at ¶ 74).

11 The EEOC issued a right-to-sue notice on September 1, 2005.

12 (Pl.'s P. & A. in Supp. of Pl.'s Mot. for Leave to Am., filed

13 October 14, 2005, at 2).

14     Plaintiff's second amended complaint includes claims for:

15 (1) fraud, (2) intentional infliction of emotional distress, (3)

16 libel, (4) conspiracy, (5) tortious interference with contractual

17 relations, (6) violations of the California Fair Employment and

18 Housing Act ("FEHA") for sexual orientation harassment and

19 retaliation, and (7) violations of her First Amendment and Due

20 Process rights under to 42 U.S.C. § 1983.  Defendants

21 subsequently brought motions to dismiss plaintiff's second

22 amended complaint.

23                          **STANDARD**

24     On a motion to dismiss, the allegations of the complaint

25 must be accepted as true.[4]  Cruz v. Beto, 405 U.S. 319, 322

26 _____

27     [4]   The court declines to consider the extrinsic evidence
   provided by Henson in support of her oppositions to defendants'
28 motions to dismiss.  In considering a motion to dismiss under
   Rule 12(b)(6), the court should look only to the pleadings.
   Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925

1 (1972).  The court is bound to give plaintiff the benefit of

2 every reasonable inference to be drawn from the "well-pleaded"

3 allegations of the complaint.  Retail Clerks Int'l Ass'n v.

4 Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff

5 need not necessarily plead a particular fact if that fact is a

6 reasonable inference from facts properly alleged.  See id.

7      A complaint need not plead all elements of a prima facie

8 case in order to survive a motion to dismiss.  Swierkewicz v.

9 Sorema N.A., 534 U.S. 506, 510-512 (2002) (rejecting a heightened

10 pleading standard for employment discrimination and civil rights

11 cases).  Fair notice of the grounds for relief along with a short

12 and plain statement of the claim are all that is required.  Id.

13 at 508 (citing Fed. R. Civ. Proc. 8(a)(2)).

14      Given that the complaint is construed favorably to the

15 pleader, the court may not dismiss the complaint for failure to

16 state a claim unless it appears beyond a doubt that the plaintiff

17 can prove no set of facts in support of the claim which would

18 entitle him or her to relief.  Conley v. Gibson, 355 U.S. 41, 45

19 (1957); NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir.

20 1986).  Nevertheless, it is inappropriate to assume that

21 plaintiff "can prove facts which it has not alleged or that the

22 defendants have violated the . . . laws in ways that have not

23 been alleged."  Associated Gen. Contractors of Cal., Inc. v.

24 California State Council of Carpenters, 459 U.S. 519, 526 (1983).

25 Moreover, the court "need not assume the truth of legal

26 conclusions cast in the form of factual allegations."  United

27 States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th

28

 (9th Cir. 2001).

1  Cir. 1986).

2      In ruling upon a motion to dismiss, the court may consider

3  only the complaint, any exhibits thereto, and matters which may

4  be judicially noticed pursuant to Federal Rule of Evidence 201.

5  See Mir v. Little Co. Of Mary Hospital, 844 F.2d 646, 649 (9th

6  Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United

7  States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

8                              **ANALYSIS**

9      In response to defendants' motions to dismiss, plaintiffs do

10  not oppose defendants' motions with respect to the following

11  claims: (1) all of plaintiff's claims against defendants Pyle,

12  Keifer, Dahle, and Hanson in their official capacities as members

13  of the Board of Supervisors of Lassen County; (2) plaintiff's

14  claims of intentional infliction of emotional distress against

15  defendants County, Mannel, Whiteman, Bixby, and Chapman; (3)

16  plaintiff's claims of libel[5] against the County, Mannel, Whiteman,

17  Bixby, and Chapman; (4) plaintiff's claims of civil conspiracy

18  against defendants County, Crosby, Margolies, Mannel, Bixby,

19  Whiteman, and Chapman; and (5) plaintiff's claim of tortious

20  interference with contractual relations against defendant County.

21      Plaintiffs' remaining claims are (1) claims for fraud

22  against defendants County, Crosby, Margolies, and Chapman; (2)

23  claims for intentional infliction of emotional distress against

24  defendants Crosby and Margolies; (3) claims of tortious

25

26      [5]   Plaintiff's counsel admitted that this claim was
27  erroneously brought as a libel claim when it should have been
    brought as a slander claim and has requested leave to amend.
28  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 16).  Plaintiff's
    request for leave to amend is addressed in Section D of this
    Order.

interference with contractual relations against defendants
Mannel, Bixby, Whiteman, and Chapman; (4) claims for sexual
orientation harassment and retaliation in violation of FEHA
against defendants County, Mannel, Bixby, Whiteman, and Chapman;
and (5) claims for First Amendment and Due Process violations
under 42 U.S.C. § 1983 against defendants County, Margolies,
Mannel, Bixby, Whiteman, and Chapman.

**A.   State Tort Claims**

    **1.   Fraud**

Defendants County, Crosby and Margolies argue that
plaintiff's fraud claim is barred because plaintiff failed to
comply with the requirements of the California Tort Claims Act
("CTCA"), Cal. Gov't Code § 900, *et seq.*  Specifically,
defendants argue that plaintiff's claim filed with the County did
not contain any factual correlation to the fraud claim asserted
in the complaint.  Pursuant to Cal. Government Code § 945.4,

> no suit for money or damages may be brought against a
> public entity on a cause of action for which a claim is
> required to by presented in accordance with Chapter 1
> (commencing with section 900) and Chapter 2 (commencing
> with section 910) of Part 3 of this division until a
> written claim therefore has been presented to the
> public entity and has been acted upon by the board, or
> has been deemed to have been rejected by the board.

Cal. Gov't Code § 945.4 (West 2005).  Moreover, any suit against
a public employee is barred in cases where a plaintiff's action
against the agency is barred for failure to present a claim.
Cal. Gov't Code § 950.2 (West 2005).  The 1965 Amendment to §
950.2 makes it clear the "the presentation of a claim to the
employing public entity is a prerequisite to suit against an
employee."  <u>Id.</u>  Therefore, in order to state a tort claim

9

1 against a public entity and its employees, plaintiff must first
2 present a claim to the government entity for money or damages,
3 with few exceptions.  Cal. Gov't Code § 905 (West 2005).  Tort
4 claims such as the instant claims for fraud, intentional
5 infliction of emotional distress, libel, conspiracy, and tortious
6 interference with contractual relations are not listed among the
7 exceptions to § 905.  Id.

8     Plaintiff has the burden of pleading compliance with the
9 CTCA in her complaint.  Wood v. Riverside General Hospital, 25
10 Cal. App. 4th 1113, 1119 (1994).  Moreover, compliance with the
11 CTCA is mandatory.  City of San Jose v. Superior Court, 12 Cal.
12 3d 447, 454 (1974).  Federal courts have recognized these
13 requirements.  See Ortega v. O'Connor, 764 F.2d 701, 707 (9th
14 Cir. 1985), rev'd on other grounds, 107 S.Ct. 1492 (1987)
15 (failure to comply with claim-filing requirements imposed by CTCA
16 bars pendent state claims).  Finally, where employees of the
17 agency in question act within their express or implied authority,
18 despite the wrongful nature of their actions, a complaint based
19 on the employees' actions may be properly dismissed for failing
20 to allege proper filing of the claim with the employing
21 government entity.  Neal v. Gatlin, 35 Cal. App. 3d 871, 877-78
22 (1973).

23     The purpose of the CTCA is to "provide the public entity
24 with sufficient information to enable it to adequately
25 investigate the claims and to settle them, if appropriate,
26 without the expense of litigation." City of San Jose, 12 Cal. 3d
27 at 455.  Pursuant to Cal. Gov't Code § 910, a claim must state
28 "the date, place and other circumstances of the occurrence or

transaction which gave rise to the claim asserted" and provide
"[a] general description of the indebtedness, obligation, injury,
damage or loss incurred so far as it may be known at the time of
presentation of the claim."  Cal. Gov't Code § 910 (West 2005).
However, it is not necessary that the claim  "specify each
particular act or omission later proven to have caused the
injury."  Stockett v. Ass'n of Cal. Water Agencies Joint Powers
Insurance Auth., 34 Cal. 4th 441, 447 (2004). The purposes of the
CTCA are met "if the claim gives adequate information for the
public entity to investigate."  Id. at 449.  "[A]dditional detail
and elaboration in the complaint is permitted." Id.
Nevertheless, the facts underlying each cause of action in the
complaint must be reflected in the claim.  Id. at 447.  The
complaint may be barred where the complaint alleges liability
based on different facts than those provided in the claim.  Id.
at 447-448.

     If a claim alerts a public entity to the existence of a
claim for monetary damages and the possibility of a lawsuit, but
does not substantially comply with §§ 910 and 910.2, the claim is
defective and triggers the operation of §§ 910.8, 911 and 911.3.
Phillips v. Desert Hospital District, 49 Cal. 3d 699, 701-702
(1989).  Pursuant to these sections, a public entity is required
to "notify the claimant of any insufficiencies of content or
timeliness that prevent a claim as presented from satisfying the
requirements of the [CTCA]." Id. at 702; Cal. Gov't Code §§
910.8, 911 and 911.3 (West 2005).  Failure to provide such notice
waives any defenses based on those insufficiencies.  Cal. Gov't
Code §§ 911 and 911.3.  The possibility of waiver encourages the

1 public entity to promptly investigate claims, which best serves

2 the purposes of the CTCA.  <u>Phillips</u>, 49 Cal. 3d at 705, 711.

3       Plaintiff's claim must reflect facts to support each cause

4 of action in the complaint.  <u>Stockett</u>, 34 Cal. 4th at 447.

5 However, plaintiff's claim failed to mention the

6 misrepresentations and omissions underlying plaintiff's fraud

7 claim.  The County was not on notice to investigate plaintiff's

8 claim of fraud because plaintiff's claim lacked any factual basis

9 to support such a claim.  Therefore, plaintiff's claim did not

10 trigger the County's duty to provide plaintiff with notice of

11 untimeliness or insufficiency of content. <u>Phillips</u>, at 702; Cal.

12 Gov't Code §§ 910.8, 911 and 911.3.

13       Plaintiff's fraud claim is barred for failure to comply with

14 the requirements of the CTCA because there is no factual

15 correlation between plaintiff's claim and plaintiff's allegation

16 of fraud in the second amended complaint.  Accordingly,

17 defendants' motions to dismiss plaintiff's fraud claim are

18 GRANTED with prejudice.[6]

19 /////

20 /////

21 /////

22       **2.  Intentional Infliction of Emotional Distress**

23 ─────────────────────

24       [6]    Plaintiff also asserts her claim of fraud against the
Lassen County Board of Supervisors, in their official capacities.

25 Plaintiff did not oppose the motion to dismiss all claims against
defendants Pyle, Keifer, Dahle, and Hanson.  However, defendant

26 Chapman is also a member of the Board of Supervisors.  Chapman is
not named as an individual defendant in the fraud claim and it is

27 unclear from the moving papers if plaintiff did not oppose
dismissal of the fraud claim against Chapman in his official

28 capacity.  However, if plaintiff is asserting a fraud claim
against defendant Chapman, it is also barred for failure to
comply with the CTCA.

1   Defendants Crosby and Margolies[7] argue that plaintiff's
2   intentional infliction of emotional distress claim fails because
3   it does not comply with the CTCA.  Plaintiff alleges in her
4   second amended complaint that she suffers from post traumatic
5   stress disorder caused by the misrepresentations and omissions as
6   to the true condition of CPS made by defendants Crosby and
7   Margolies during plaintiff's hiring process.  (Pl.'s Second Am.
8   Compl. ¶¶ 20-24, 32, 63, 88-89).  However, plaintiff's claim with
9   the County did not contain any factual allegations relating to
10  these omissions and misrepresentations.  Therefore, plaintiff's
11  claim for intentional infliction of emotional distress against
12  defendants Crosby and Margolies is barred for failure to comply
13  with the CTCA.  See Stockett, 34 Cal. 4th at 447.  Accordingly,
14  defendants' motions to dismiss plaintiff's intentional infliction
15  of emotional distress claim are GRANTED with prejudice.

16        **5.  Tortious Interference with Contractual Relations**

17        Defendants Mannel, Bixby, Whiteman, and Chapman argue that
18  plaintiff's tortious interference with contractual relations
19  claim fails because plaintiff was not employed pursuant to a
20  contract.[8]  The existence of a valid contract is an essential
21  element of a tortious interference with contractual relations

22

23        [7]     Plaintiff did not oppose defendants County, Mannel,
24  Whiteman, Bixby, and Champman's motion to dismiss her claims of
    intentional infliction of emotional distress because they were
25  barred by the exclusivity provisions of California's Workers'
    Compensation laws.  However, plaintiff did not address the
26  applicability of such exclusivity provisions to her claims
    against defendants Crosby and Margolies.

27        [8]     Defendants also argue that plaintiff's claim is barred
28  for failure to comply with the CTCA.  For the reasons set forth
    herein, the court need not reach the issue of compliance with the
    CTCA.

1  claim.  <u>Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill.</u>

2  <u>Square Venture Partners</u>, 52 Cal. App. 4th 867 (1997).

3      In California, it is well settled that

4          public employment is *not held by contract but by*

        *statute* and that, insofar as the duration of such

5          employment is concerned, no employee has a vested

        contractual right to continue in employment beyond

6          the time or contrary to the terms and conditions

        fixed by law.

7

8  <u>Miller v. State of California</u>, 18 Cal. 3d 808, 813-814 (1977).

9  <u>See also</u> <u>Keiser v. Lake County Super Court</u>, 2005 WL 3370006 (N.D.

10 Cal. Dec. 12, 2005); <u>Shoemaker v. Myers</u>, 52 Cal. 3d 1 (1990);

11 <u>Hill v. City of Long Beach</u>, 33 Cal. App. 4th 1684 (1995);

12 <u>Kemmerer v. County of Fresno</u>, 200 Cal. App. 3d 1426 (1988);

13 <u>Hinchliffe v. City of San Diego</u>, 165 Cal. App. 3d 722 (1985).

14 As a public employee, plaintiff's employment with the County is

15 governed by statute and not by contract.  Therefore, plaintiff's

16 claim fails as a matter of law.  Accordingly, defendants' motion

17 to dismiss plaintiff's tortious interference with contractual

18 relations claim is GRANTED with prejudice.

19 **B.    Fair Employment and Housing Act Claims**

20     Defendants County, Mannel, Bixby, Whiteman, and Chapman

21 argue that plaintiff's FEHA claims should be dismissed because

22 they are barred for untimeliness.  FEHA provides that "[n]o

23 complaint may be filed after the expiration of one year from the

24 date upon which the alleged unlawful practice or refusal to

25 cooperate occurred."  Cal. Gov't Code § 12960 (West 2006).  The

26 filing of a complaint with the DFEH is a prerequisite to bringing

27 a civil action.  <u>Rodriquez v. Airborne Express</u>, 265 F. 3d 890,

28 896 (9th Cir. 2001).

1      Plaintiff alleges that she filed a complaint with the DFEH

2  "on or about June 22, 2005, and within one year of the series of

3  discriminatory actions by the defendants." (Pl.'s Second Am.

4  Compl. at ¶ 72).  Plaintiff further alleges that the DFEH issued

5  a right-to-sue notice on or about June 27, 2005.  (Id. at ¶ 73).

6  Therefore, any offending conduct occurring prior to June 22,

7  2004, cannot serve as a basis for liability pursuant to FEHA

8  unless an exception to the statute of limitations applies.

9  Cucuzza v. City of Santa Clara, 104 Cal. App. 4th 1031, 1040

10 (2002).

11     Plaintiff may be able to establish an equitable exception to

12 the statute of limitations relating to her FEHA claims.  See

13 Rodriguez, 265 F.3d 890; Cervantes v. City of San Diego, 5 F.3d

14 1273 (9th Cir. 1993); Richards v. CH2M Hill, Inc., 26 Cal. 4th

15 798 (2001).  Plaintiff addresses the application of the

16 continuing violation doctrine and implicates other equitable

17 tolling doctrines in her opposition to defendants' motion to

18 dismiss. (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 24-26).

19 However, plaintiff must set forth sufficient facts in her second

20 amended complaint to support the invocation of such equitable

21 theories.  Plaintiff has failed to do so.  As such, the court

22 cannot consider the possible applicability of such doctrines for

23 the purposes of this motion to dismiss pursuant to Rule 12(b)(6).

24     Plaintiff began a work-related medical leave on June 1,

25 2004, and the majority of plaintiff's allegations relating to her

26 sexual orientation harassment and retaliation claims occurred

27 prior thereto. (Pl.'s Second Am. Compl. at ¶¶ 40-62).  Therefore,

28 plaintiff has not exhausted her administrative remedies as to

1 these allegations.  Accordingly, defendants' motion as to these
2 allegations is GRANTED.

3      Plaintiff alleges that the County sent her a denial of
4 benefits letter in November 2004.  (<u>Id.</u> at ¶ 68).  With respect
5 to this conduct, plaintiff has properly alleged that she timely
6 filed her complaint with the DFEH and exhausted all
7 administrative remedies prior to bringing this action. However,
8 the notice of discontinuance of disability benefits, standing
9 alone, is insufficient to support plaintiff's claims of sexual
10 orientation harassment and retaliation in violation of FEHA.
11 Accordingly, defendants' motion to dismiss plaintiff's FEHA
12 claims is GRANTED.

13 **C.   42 U.S.C. § 1983 Claims**

14      To state a claim under 42 U.S.C. § 1983, plaintiff must
15 plead facts demonstrating that (1) defendants acted under color
16 of state law; and (2) deprived plaintiff of rights secured by the
17 constitution or federal statutes.  <u>Sanchez v. City of Santa Ana</u>,
18 936 F.2d 1027, 1037 (9th Cir. 1991).

19      **1.   First Amendment Violation**

20      Plaintiff's alleges that she was deprived of her First
21 Amendment rights because she was retaliated against for making
22 complaints regarding sexual harassment and other civil rights
23 violations.  (Pl.'s Second Am. Compl. at ¶¶ 133, 135).  When an
24 employer wrongfully retaliates against an employee for speech
25 protected by the First Amendment, the employer has violated
26 § 1983.  <u>Sanchez</u>, 936 F.2d at 1037.  In order to state a claim
27 against a government employer for a violation of the First
28 Amendment, plaintiff must show that (1) she engaged in protected

16

1  speech; (2) the employer took adverse employment action; and (3)

2  her speech was the substantial or motivating factor for the

3  adverse employment action.  Coszalter v. City of Salem, 320 F.3d

4  968, 973 (9th Cir. 2003).

5      "An employee's speech is protected under the First Amendment

6  if it addresses 'a matter of legitimate public concern'".  Id.

7  (quoting Pickering v. Bd. of Educ., 391 US 563, 571 (1968)).  The

8  Ninth Circuit has defined speech of public concern as:

9          [S]peech that concerns "issues about which information
           is needed or appropriate to enable the members of
10         society" to make informed decisions about the
           operation of their government. "This type of speech
11         merits the highest degree of first amendment
           protection."

12

13 McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir. 1983)

14 (citations omitted).

15      Moreover, plaintiff must show that she was subjected to

16 adverse employment action.  A government act of retaliation need

17 not be severe or of a certain kind.  Coszalter, 320 F. 3d at 975.

18 Even minor acts can infringe on an employee's First Amendment

19 rights if they have an impermissible chilling effect.  Id.  If

20 plaintiff "can establish that the actions taken by the defendants

21 were 'reasonably likely to deter' [her] from engaging in

22 protected activity under the First Amendment, [she] will have

23 established a valid claim under § 1983."  Id. at 976.

24      Finally, plaintiff must establish that the protected speech

25 was a substantial or motivating factor for such adverse action.

26 Id. at 977.  A plaintiff may establish this element in three

27 ways.  First, plaintiff may introduce evidence relating to "the

28 proximity in time between the protected action and allegedly

17

1  adverse employment action" from which a jury could infer that the

2  action was retaliatory in nature.  <u>Id.</u> (citations omitted).

3  Second, plaintiff may introduce evidence that her "employer

4  expressed opposition" to her speech.  <u>Id.</u>  Third, plaintiff may

5  introduce evidence that her "employer's proffered explanations

6  for the adverse employment action were false and pre-textual."

7  <u>Id.</u>

8            **(a)  Defendants Mannel, Whiteman, Bixby, and Chapman**

9       Defendants Mannel, Whiteman, Bixby, and Chapman argue that

10 plaintiff has failed to state a claim under § 1983 because her

11 allegations of constitutional deprivation rely entirely on

12 conclusory allegations of law and unwarranted inferences.

13      Plaintiff argues that her speech is protected because she

14 made statements concerning potential civil rights violations.

15 Plaintiff alleges she made statements to defendants concerning

16 allegedly false sexual harassment claims against her.  (Pl.'s

17 Second Am. Compl. at ¶¶ 40, 44).  Plaintiff also alleges that she

18 made statements to the defendants regarding her refusal to take

19 discriminatory action against Mr. Snitkin and rescind his job

20 offer.  (<u>Id.</u> at ¶¶ 46-47 and Exs. 8-9).  Information regarding

21 potential civil rights violations by the County and its officials

22 is a matter of public concern.  <u>Coszalter</u>, 320 F.3d at 973.

23 Therefore, plaintiff has alleged facts sufficient to establish

24 her speech is protected under the First Amendment.

25 /////

26      Plaintiff also alleges that she was subjected to adverse

27 employment action as a result of these statements.  Plaintiff

28 alleges that she was (1) subjected to an intolerable and abusive

18

1   working environment, (2) subjected to defamatory statements

2   regarding her professionalism and management of CPS, (3) stripped

3   of her control of CPS, and (4) denied health care benefits while

4   on disability leave.  (Pl.'s Second Am. Compl. at ¶¶ 48, 51, 56,

5   57, 61, 64, 67, 68).  Plaintiff's allegations are sufficient to

6   demonstrate adverse employment action.

7        Finally, plaintiff alleges facts to support the inference

8   that plaintiff's statements were a substantial or motivating

9   factor for the adverse employment action.  Plaintiff first

10  expressed her concerns regarding possible civil rights violations

11  in January 2004, and continued to do so through March 2004.

12  (Pl.'s Second Am. Compl. ¶¶ 40, 44, 47, 51).  Plaintiff alleges

13  that the adverse employment action began in February or March

14  2004. (Pl.'s Second Am. Compl. ¶ 48).  The proximity in time

15  between plaintiff's initial statements concerning potential civil

16  rights violations and the commencement of adverse employment

17  action is so close that a jury could infer that plaintiff's

18  statements were a substantial or motivating factor for such

19  adverse action.

20       Accepting plaintiff's allegations as true, plaintiff has

21  set forth sufficient facts to establish a valid claim under §

22  1983 for violation of her First Amendment rights against the

23  individual defendants Mannel, Whiteman, Bixby, and Chapman.

24  Therefore, defendants Mannel, Bixby, Whiteman, and Chapman's

25  motion to dismiss plaintiff's claim for a First Amendment

26  violation under 42 U.S.C. § 1983 is DENIED.

27            **(b)   Defendant County**

28       Defendant County contends that plaintiff fails to set forth

19

1  facts to support municipal liability under <u>Monell v. Dept. of</u>

2  <u>Social Services</u>, 436 U.S. 658 (1978).  To establish municipal

3  liability, plaintiff must allege one of the following factual

4  scenarios: (1) that a government employee committed the alleged

5  violation under a formal government policy, practice, or custom

6  which is the "standard operating procedure" of the government

7  entity; (2) that the individual committing the constitutional

8  tort is an official with "final policy-making authority;" or (3)

9  "that an official with final policy-making authority ratified a

10  subordinate's unconstitutional decision or action and the basis

11  for it."  <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1346-47 (9th Cir.

12  1992).

13       Plaintiff alleges that the customs, practices, and policies

14  of the County violated her free speech and due process rights.

15  (Pl.'s Second Am. Compl. at ¶ 135).  Specifically, she alleges

16  that the customs, practices, and policies of the County are

17  deliberately indifferent to the rights of persons bringing forth

18  civil rights concerns.  (<u>Id.</u>)  Taking all of the evidence and

19  considering it in the light most favorable to plaintiff, the

20  court can reasonably infer that plaintiff intends to prove that

21  the individual defendants committed the alleged violations under

22  a formal policy, custom, or practice of the County.  Accordingly,

23  defendant County's motion to dismiss plaintiff's claim on the

24  basis of failure to properly allege liability under <u>Monell</u> is

25  DENIED.

26            **(c)  Defendant Margolies**

27       Defendant Margolies argues that plaintiff has failed to

28  allege facts sufficient to set forth a valid claim against her

20

under § 1983 for violation of her First Amendment rights.
Plaintiff failed to specifically allege that defendant Margolies
acted under color of law.  However, plaintiff does allege that at
all times defendant Margolies was acting within the course and
scope of her employment with the County.  (Pl.'s Second Am.
Compl. at ¶ 14).  Drawing every reasonable inference in the light
most favorable to the plaintiff, plaintiff has sufficiently
alleged facts to support her claim that defendant Margolies was
acting under color of law.

     Plaintiff alleges that she complained to defendant Margolies
about the allegedly false sexual harassment claims lodged against
plaintiff and the discriminatory conduct taken against Mr.
Snitkin.  (Pl.'s Second Am. Compl. ¶¶ 40-47).  Plaintiff asserts
that defendant Margolies failed to take action regarding the
false sexual harassment claims against plaintiff and ordered
plaintiff to rescind the job offer to Mr. Snitkin.  (Id. at ¶¶
43, 46).  Plaintiff claims that as a result of defendant
Margolies' action and inaction, she was subjected to a hostile
work environment.  (Id. at ¶¶ 48, 135); See also Coszalter, 320
F.3d at 976-977 (considering factors such as repeated and ongoing
verbal harassment and humiliation, withholding of customary
public recognition, and an unpleasant work assignment in finding
that plaintiff had established a triable issue of fact regarding
adverse employment action).  Defendant Margolies' action and
inaction occurred within weeks of plaintiff's statements.  (Id.
at ¶¶ 40-46).  Therefore, the proximity in time between
plaintiff's statements and defendant Margolies' conduct support
an inference that plaintiff's statements were a substantial or

1  motivating factor for the adverse employment action.

2  Accordingly, defendant Margolies' motion to dismiss plaintiff's

3  claim for a First Amendment violation pursuant to 42 U.S.C. §

4  1983 is DENIED.

5      **2.  Due Process Violation**

6      Defendants County, Mannel, Bixby, Whiteman, Chapman, and

7  Margolies argue that plaintiff's due process claim fails because

8  plaintiff failed to establish that she has a property interest in

9  her continued employment.  "The Due Process Clause provides that

10 certain substantive rights — life, liberty, and property — cannot

11 be deprived except pursuant to constitutionally adequate

12 procedures."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532,

13 541 (1985).  Therefore, the due process guarantees of the

14 Fourteenth Amendment are only implicated when a constitutionally

15 protected property or liberty interest is at stake.  Sanchez v.

16 City of Santa Ana, 915 F.2d 424, 428 (9th Cir. 1990) (citations

17 omitted).  Property interests are not created by the

18 constitution.  Id. (citing Bd. of Regents v. Roth, 408 U.S. 564

19 (1972)). Rather they are created "by existing rules or

20 understandings that stem from an independent source such as state

21 law."  Id.

22     The California Civil Service Act, Cal. Gov't Code § 18500,

23 et seq., provides that an employee who attains permanent status

24 has a statutory right to continued employment.  Duncan v. Dep't

25 of Personnel Admin., 77 Cal. App. 4th 1166, 1175 (2000) (citing

26 Skelly v. State Personnel Bd., 15 Cal. 3d 194 (1975)). This

27 statutory right constitutes a legitimate claim of entitlement to

28 continued government employment requiring compliance with

1 procedural due process.  <u>Id.</u>  Permanent status is achieved when

2 an employee, who is lawfully retained, completes the requisite

3 probationary period.  Cal. Gov't Code § 18528 (West 2006).

4      It is unclear from plaintiff's second amended complaint if

5 she achieved the status of a permanent employee under the

6 California Civil Service Act prior to taking leave on June 1,

7 2004.  Plaintiff has not pled any facts that establish the level

8 of service she attained at the time of her leave.  Because

9 plaintiff has failed to plead facts to establish she attained

10 permanent employee status, plaintiff has not set forth sufficient

11 facts to establish that she has a property interest in her

12 continued employment.  Accordingly, defendants' motions to

13 dismiss plaintiff's due process claim are GRANTED.

14 **D.  Plaintiff's Request for Leave to Amend**

15      Pursuant to Rule 15(a), "leave [to amend] is to be freely

16 given when justice so requires."  "[L]eave to amend should be

17 granted unless amendment would cause prejudice to the opposing

18 party, is sought in bad faith, is futile, or creates undue

19 delay."  <u>Martinez v. Newport Beach</u>, 125 F.3d 777, 785 (9th Cir.

20 1997).

21      Plaintiff requested leave to amend her complaint to add

22 claims of sexual discrimination pursuant to Title VII, 42 U.S.C.

23 § 2000e-2(a)(1), and discrimination and retaliation in violation

24 of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§

25 12100 *et seq.*  (Pl.'s P. & A. in Supp. of Mot. to Am. at 3).

26 Defendants contend that granting plaintiff's request is futile

27 because plaintiff failed to timely file a charge of

28 discrimination with the EEOC.  A plaintiff must file a timely

23

1  charge of discrimination with the EEOC as a prerequisite to
2  maintaining a Title VII or ADA action. 42 U.S.C. §§ 2000e-5,
3  12117(a)(West 2006).  A complainant is required to file a charge
4  with the EEOC within 180 days of the last act of alleged
5  discrimination, unless the complainant initially institutes
6  proceedings with a state or local agency, in which case the EEOC
7  charge must be filed within 300 days.  Id.

8       Plaintiff alleges that she filed her charge of
9  discrimination with the DFEH, a state agency, and thereafter
10 filed her charge of discrimination with the EEOC within the
11 requisite 300-day period.  (Pl.'s Second Am. Compl. at ¶¶ 72-74).
12 Therefore, because plaintiff alleges that she timely filed her
13 claims with the EEOC, plaintiff's claims are not futile.
14 Accordingly, plaintiff's motion requesting leave to amend to add
15 federal claims of discrimination and retaliation is GRANTED.
16      In addition, in her Opposition to defendants' Motion to
17 Dismiss, plaintiff requested leave to amend her claim of libel to
18 a claim for slander.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at
19 16).  Plaintiff has alleged sufficient facts in her second
20 amended complaint to support a claim for slander.  (Pl.'s Second
21 Am. Compl. at ¶¶ 56, 57, 59, 60).  Therefore, plaintiff's request
22 for leave to amend her libel claim to slander is GRANTED.

23      In her opposition, plaintiff requests leave to amend if the
24 court finds that the pleadings were deficient.  (Pl.'s Opp'n to
25 Defs.' Mot. to Dismiss at 34).  Because there is no indication
26 that plaintiff's amendment is sought in bad faith or is futile,
27 and because plaintiff's case is at the early stages of
28 litigation, plaintiff is granted leave to amend the complaint to

24

correct the deficiencies found in the pleadings.  Plaintiff may not amend her complaint where the court has granted defendants' motions to dismiss with prejudice because amendment of these claims would be futile.

**CONCLUSION**

Based on the foregoing analysis, the court makes the following orders:

1. Defendants Pyle, Keifer, Dahle, and Hanson's motion to dismiss all claims is GRANTED.

2. Defendant Crosby's motion to dismiss is:

   (a) GRANTED with prejudice as to plaintiff's fraud claim;

   (b) GRANTED with prejudice as to plaintiff's intentional infliction of emotional distress claim; and

   (c) GRANTED as to plaintiff's civil conspiracy claim.

3. Defendant Margolies' motion to dismiss is:

   (a) GRANTED with prejudice as to plaintiff's fraud claim;

   (b) GRANTED with prejudice as to plaintiff's intentional infliction of emotional distress claim;

   (c) GRANTED as to plaintiff's civil conspiracy claim;

   (d) DENIED as to plaintiff's claim of a First Amendment violation under 42 U.S.C. § 1983; and

   (e) GRANTED as to plaintiff's claim of a Due Process violation under 42 U.S.C. § 1983.

4. Defendants County, Mannel, Bixby, Whiteman, and

25

1      Chapman's motion to dismiss is:

2      (a)   GRANTED with prejudice as to plaintiff's fraud
3            claim;

4      (b)   GRANTED with prejudice as to plaintiff's
5            intentional infliction of emotional distress
6            claim;

7      (c)   GRANTED as to plaintiff's libel claim;

8      (d)   GRANTED as to plaintiff's civil conspiracy claim;

9      (e)   GRANTED with prejudice as to plaintiff's tortious
10           interference with contractual relations;

11     (f)   GRANTED as to plaintiff's claims of sexual
12           orientation harassment and retaliation in
13           violation of FEHA;

14     (g)   DENIED as to plaintiff's claim of a First
15           Amendment violation under 42 U.S.C. § 1983; and

16     (h)   GRANTED as to plaintiff's claim of a Due Process
17           violation under 42 U.S.C. § 1983.

18     Plaintiff's motion for leave to amend is GRANTED.  Plaintiff
19 is granted twenty (20) days from the date of this order to file a
20 third amended complaint in accordance with this order.
21 Defendants are granted thirty (30) days from the date of service
22 of plaintiff's third amended complaint to file a response
23 thereto.

24     IT IS SO ORDERED.

25 DATED: February 22, 2006.

26 _____
                                   /s/ Frank C. Damrell Jr.
27                                 FRANK C. DAMRELL, JR.
                                   United States District Judge
28