UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DEBORAH HENSON,

       Plaintiff,

                           NO. CIV. 05-CV-1099-FCD-KJM

    v.

LASSEN COUNTY, et al.,

       Defendants.

_____/

----oo0oo----

    This matter comes before the court on defendants' motion to dismiss plaintiff Deborah Henson's third amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Plaintiff includes additional claims in her complaint, which the court interprets as a motion for leave to amend pursuant to Rule 15(a). For the reasons set forth below, defendants' motion to dismiss is

---

[1]    All further references to a "Rule" are to the Federal Rules of Civil Procedure.

1

GRANTED in part and DENIED in part, and plaintiff's motion for
leave to amend is GRANTED in part and DENIED in part.[2]

### BACKGROUND

In April of 2003, plaintiff submitted her resume to the
California Merit Systems Board for consideration for the position
of supervisor or director of a Child Protective Services ("CPS")
division.  (Pl.'s Third Am. Compl. ("TAC") ¶ 16, filed March 27,
2006.)  Thereafter, plaintiff was contacted by Margaret Crosby to
interview for the position of CPS Supervisor in defendant Lassen
County ("Lassen").  (TAC ¶ 17.)  After plaintiff interviewed for
the position, she was offered the job by defendant Crosby,
Lassen's Deputy Director of Health and Human Services.  (TAC ¶¶
18-19.)  Before accepting the position, plaintiff informed Crosby
that she was in remission from panic/anxiety disorder and that
such condition could recur if more than ordinary levels of stress
were involved in her position at CPS.  (TAC ¶ 20.)

Plaintiff commenced employment on May 12, 2003, relying on
Crosby's assurances that CPS was in good order and provided
health insurance benefits to its managerial employees while on
disability leave.  (TAC ¶¶ 34, 25-28, 30.)  However, plaintiff
later learned that CPS was subject to a grand jury investigation
and was in a state of non-compliance with the California
Department of Social Services.  (TAC ¶¶ 40.)  This was not
disclosed to plaintiff during her interview process; rather
defendants Crosby and Margolies, Lassen's Personnel Director,
intentionally withheld this information from plaintiff.  (TAC ¶¶

---

[2]    Because oral argument will not be of material
assistance, the court orders this matter submitted on the briefs.
E.D. Cal. Local Rule 78-230(h).

9, 26-27.)  Plaintiff later learned that CPS was understaffed by more than half of its required full-time employees, which dictated that plaintiff work between 70 and 80 hours per week. (TAC ¶¶ 37-38.)

Plaintiff was promoted to Director of CPS in November 2003. (TAC ¶ 45.)  Around the same time, plaintiff completed her 6-month probationary period and became a permanent employee.  (TAC ¶ 48.)  Shortly after she was promoted, a coworker, Deanna Bovee, lodged a female-on-female sexual harassment complaint against plaintiff.  (TAC ¶ 57.)  During this time, plaintiff also became the subject of sexually-orientated slurs by members of CPS staff. (TAC ¶ 49.)  In early January 2004, plaintiff demanded that action be taken regarding the allegedly false sexual harassment claim filed against her.  (TAC ¶ 58.)  Although Bovee's allegation was recanted, no action was taken to remedy such accusations or clear plaintiff's name.  (TAC ¶¶ 59-61.)  In addition, these allegations were investigated by Jim Jackson in March and April 2004.  (TAC ¶ 73.)  Jackson found that plaintiff was injured by the false allegations and that disciplinary action should be taken against the complainant.  (Id.)  However, no action was taken in response to Jackson's report.  (TAC ¶ 74.)

In early 2004, plaintiff sought to hire a CPS social worker. (TAC ¶ 63.)  Defendant Mannel, Lassen's Director of Mental Health, demanded that plaintiff hire his wife.  Plaintiff refused because Mannel's wife did not apply for the position through the proper channels.  (TAC ¶¶ 5, 54-55.)  Instead, plaintiff offered the position to Bill Snitkin.  (Id. at 63.)  Defendant Margolies directed plaintiff to rescind the job offer to Snitkin, or in the

alternative, prepare for his termination by "starting a paper trail," because Snitkin was HIV positive.  (TAC ¶¶ 64.) Plaintiff refused to rescind the offer.  (TAC ¶ 65.)  On February 17, 2004, defendants Whiteman, Mannel and Margolies met with Plaintiff and again demanded she hire Mannel's wife.  (TAC ¶ 66.) At this time, Whiteman was Lassen's Chief Administrative Officer. (TAC ¶ 8.)  Following another demand to hire Mannel's wife in March 2004, plaintiff sought medical care for anxiety induced chest pains.  (TAC ¶ 71.)

    Thereafter, plaintiff believes that defendants Whiteman, Mannel, and others attempted to solicit negative information about plaintiff, which may have resulted in the filing of a second female-on-female sexual harassment complaint against plaintiff.  (TAC ¶¶ 72, 75.)  Again, the complaint was later recanted.  (TAC ¶ 78.)  Plaintiff believes that Chapman, a member of Lassen's Board of Supervisors, as well as Whiteman and Mannel, met with Woody Morgan, managing editor of the Lassen County News. (TAC ¶¶ 8, 76.)  Plaintiff also believes that these defendants made defamatory statements and provided false and misleading information to Morgan regarding plaintiff's professionalism and management of CPS.  (TAC ¶ 77.)  Thereafter, plaintiff was "shocked and humiliated" by the call for plaintiff's termination in Morgan's article published in the Lassen County News on May 11, 2004.  (TAC ¶¶ 79-80.)

    Plaintiff believes that, as a result of her complaints regarding the allegedly false sexual harassment claims, her refusal to hire defendant Mannel's wife, her refusal to rescind the job offer to Snitkin, and her refusal to engage in

4

1  discriminatory conduct toward Snitkin, defendants Whiteman,
2  Chapman, Mannel, and others conspired to create intolerable
3  working conditions and to interfere with her civil rights so as
4  to cause her to quit her job or take a disability leave.  (TAC ¶¶
5  67, 69.)

6      Plaintiff also believes Whiteman discriminated against women
7  employed by Lassen.  (TAC ¶ 81.)  In April 2004, Whiteman told
8  plaintiff she should "leave the bigger issues to the men in
9  management."  (TAC ¶ 82.)  Mannel, a male employee with the same
10 level of responsibility, the same title and comparable duties
11 earned approximately $20,000 more per year than Plaintiff.  (TAC
12 ¶ 84.)

13     On June 1, 2004, defendant Bixby, Lassen's Chief
14 Administrative Officer, informed plaintiff by memorandum that he
15 was placing the operations of CPS under the control of defendant
16 Mannel.  (TAC ¶ 87.)  On that same date, plaintiff began a 14 day
17 medical leave as a result of work-related stress.  (TAC ¶ 88.)
18 Subsequently, plaintiff sought the care of a psychiatrist, who
19 diagnosed plaintiff as suffering from post traumatic stress
20 disorder.  (TAC ¶ 93.)  As a result of her mental and emotional
21 condition, plaintiff has been unable to seek suitable re-
22 employment after July 27, 2004.  (TAC ¶ 96.)

23     While plaintiff took medical leave, Mannel prohibited CPS
24 staff from contacting her and repeatedly made false, degrading
25 comments about her professional abilities during staff meetings.
26 (TAC ¶¶ 89-90.)  During this time, Mannel removed and destroyed
27 her diplomas and other personal property from her office.  (TAC ¶
28 91.)  Defendant Bixby demanded by letter on June 15, 2004 that

plaintiff refrain from contacting any member of the staff at CPS.
(TAC ¶¶ 6, 92.)  This action effectively ended plaintiff's
authority over CPS.  (TAC ¶ 92.)  Plaintiff remained on sick
and/or medical leave until July 27, 2004.  (TAC ¶ 95.)  In
November 2004, plaintiff received a letter from Ronald Vossler,
Lassen County Human Resources Director, notifying plaintiff that
her health care premium payments were overdue and her benefits
would be discontinued effective September 2004.  (TAC ¶ 98-99 and
Ex. 14.)

    Plaintiff filed a claim for damages with the County on
December 10, 2004.  (TAC ¶ 101.)  Plaintiff's claim alleged that
plaintiff was wrongfully terminated on December 1, 2004.  (TAC at
Ex. 15.)  Plaintiff's claim also alleged that she was subjected
to a hostile work environment, which caused her to have an
emotional breakdown and to suffer from post traumatic stress
disorder.  (Id.)  In addition, plaintiff's claim included
allegations of malicious acts by County officials, slander and
retaliation for whistle blowing.  (Id.)  Plaintiff alleged that
John Kettleson, all Supervisors of Lassen County, William Bixby,
Margaret Crosby, and others caused her injuries.  (Id.)  The
County denied plaintiff's claim on January 11, 2005.  (TAC ¶
102.)  Plaintiff submitted another claim to Lassen by letter
dated March 10, 2005.  (TAC ¶ 113.)  She later filed an amended
complaint with Lassen on March 25, 2006.  (TAC ¶ 120.)

    Plaintiff also filed complaints with the Department of Fair
Employment and Housing ("DFEH").  She called the DFEH on March
14, 2005 to inquire about filing a complaint and scheduled an
interview for June 14, 2005.  (TAC ¶ 103.)  Plaintiff filed

charges for discrimination, harassment and retaliation with the
DFEH in June 2005.  (TAC ¶ 105 and Ex. 17.)  The DFEH issued a
right-to-sue notice on June 27, 2005.  (TAC ¶ 106.)  Plaintiff
then filed claims for violations of Title VII and the Americans
with Disabilities Act ("ADA") with the Equal Employment
Opportunity Commission ("EEOC") on July 12, 2005.  (TAC ¶ 107.)
The EEOC issued a right-to-sue notice on September 1, 2005.  (TAC
¶ 108.)  The Department of Justice issued a right to sue letter
based on plaintiff's ADA claim October 4, 2005.  (TAC ¶ 109.)

      Plaintiff received a final termination letter from Lassen
dated November 18, 2005.  (TAC ¶ 110.)  After receipt of this
letter, plaintiff requested COBRA benefits.  Lassen did not grant
the request.  (TAC ¶ 111-12.)  Plaintiff submitted an additional
claim to DFEH restating complaints against Mannel on January 28,
2006.  (TAC ¶ 115.)  The DFEH issued a right to sue notice for
this claim on March 10, 2006.  (TAC ¶ 117.)  Plaintiff requested
a right to sue notice from the EEOC regarding these restated
complaints on March 13, 2006, which was issued by the Department
of Justice on March 27, 2006.  (TAC ¶¶ 118-19.)

      Plaintiff filed her first complaint with this court June 1,
2005.  She then filed an amended complaint which defendants moved
to dismiss.  On February 22, 2006, this court granted in part and
denied in part defendants' motion to dismiss.  The court denied
defendant's motion to dismiss plaintiff's claims of first
amendment violations under 42 U.S.C. § 1983.  The court dismissed
plaintiff's other claims and granted plaintiff's motion for leave
to amend to add claims pursuant to Title VII, the ADA and
slander.  The court also granted plaintiff's motion for leave to

1  amend deficiencies in those claims that were not dismissed with

2  prejudice.  A stipulation order on March 15, 2006 permitted

3  plaintiff to include additional facts and claims arising out of

4  events which occurred after filing the second amended complaint.

5  Plaintiff filed her third amended complaint April 26, 2006.

6       Defendants move to dismiss plaintiff's claims for: (1)

7  violations of her due process rights under 42 U.S.C. § 1983; (2)

8  violations of the California Fair Employment and Housing Act

9  ("FEHA") for retaliation, harassment and discrimination; (3)

10  violation of Title VII for retaliation and sexual discrimination;

11  (4) violation of the ADA; and (5) slander.[3]

12       Plaintiff requests leave to amend[4] to add claims for: (1)

13  Title VII discrimination in compensation; (2) violation of

14  Federal Equal Pay Act and the California Equal Pay Act; (3)

15  violation of FEHA for discrimination in compensation; (4)

16  negligent infliction of emotional distress ("NIED");(5)

17  conversion of personal property; and (6) violation of COBRA.

18                          **Standard**

19  **A.   Motion to Dismiss**

20       On a motion to dismiss, the allegations of the complaint

21  must be accepted as true.  <u>Cruz v. Beto</u>, 405 U.S. 319, 322

22

---

23       [3]   Defendants do not move to dismiss plaintiff's seventh
24  claim for relief for wrongful termination in violation of public
     policy.

25       [4]   Plaintiff asserts that her new claims fall within the
26  March 15, 2006 stipulation and order, which granted plaintiff
     leave to amend to add new claims arising out of facts occurring
27  after October 13, 2005.  The facts supporting plaintiff's new
     claims occurred before October 13, 2005.  Therefore, the court
28  did not grant plaintiff leave to amend her new claims, and the
     court interprets plaintiff's inclusion of her new claims as a
     request for leave to amend.

1  (1972).  The court is bound to give plaintiff the benefit of

2  every reasonable inference to be drawn from the "well-pleaded"

3  allegations of the complaint.  Retail Clerks Int'l Ass'n v.

4  Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff

5  need not necessarily plead a particular fact if that fact is a

6  reasonable inference from facts properly alleged.  See Id.

7      A complaint need not plead all elements of a prima facie

8  case in order to survive a motion to dismiss.  Swierkewicz v.

9  Sorema N.A., 534 U.S. 506, 510-512 (2002) (rejecting a heightened

10  pleading standard for employment discrimination and civil rights

11  cases).  Fair notice of the grounds for relief along with a short

12  and plain statement of the claim are all that is required.  Id.

13  at 508 (citing Fed. R. Civ. Proc. 8(a)(2)).

14      Given that the complaint is construed favorably to the

15  pleader, the court may not dismiss the complaint for failure to

16  state a claim unless it appears beyond a doubt that the plaintiff

17  can prove no set of facts in support of the claim which would

18  entitle him or her to relief.  Conley v. Gibson, 355 U.S. 41, 45

19  (1957); NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir.

20  1986).  Nevertheless, it is inappropriate to assume that

21  plaintiff "can prove facts which it has not alleged or that the

22  defendants have violated the . . . laws in ways that have not

23  been alleged."  Associated Gen. Contractors of Cal., Inc. v.

24  California State Council of Carpenters, 459 U.S. 519, 526 (1983).

25  Moreover, the court "need not assume the truth of legal

26  conclusions cast in the form of factual allegations."  United

27  States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th

28  Cir. 1986).

9

1    In ruling upon a motion to dismiss, the court may consider
2  only the complaint, any exhibits thereto, and matters which may
3  be judicially noticed pursuant to Federal Rule of Evidence 201.
4  See Mir v. Little Co. Of Mary Hospital, 844 F.2d 646, 649 (9th
5  Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United
6  States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

7    Rule 201 permits a court to take judicial notice of an
8  adjudicative fact "not subject to reasonable dispute," in that
9  the fact is either "(1) generally known within the territorial
10 jurisdiction of the trial court or (2) capable of accurate and
11 ready determination by resort to sources whose accuracy cannot
12 reasonably be questioned." Fed. R. Evid. 201(b).  The court can
13 take judicial notice of matters of public record, such as
14 pleadings in another action and records and reports of
15 administrative bodies.  See Emrich v. Touche Ross & Co., 846 F.2d
16 1190, 1198 (9th Cir. 1988).

17 **B.    Leave to Amend**

18   Pursuant to Rule 15(a), "leave [to amend] is to be freely
19 given when justice so requires."  "[L]eave to amend should be
20 granted unless amendment would cause prejudice to the opposing
21 party, is sought in bad faith, is futile, or creates undue
22 delay."  Martinez v. Newport Beach, 125 F.3d 777, 785 (9th Cir.
23 1997).

24                          **Analysis**

25 **A.   Motion to Dismiss**

26   **1.   Defendant Crosby**

27   Defendant Crosby moves to dismiss all claims because
28 plaintiff's third amended complaint does not state any specific

10

1  claim for relief against her.   Plaintiff does not oppose

2  dismissing all claims against defendant Crosby.   Therefore,

3  defendant Crosby's motion to dismiss is GRANTED.

4       **2.   42 U.S.C. § 1983**

5       Defendants Lassen, Mannel, Bixby, Whiteman, Margolies, and

6  Chapman move to dismiss plaintiff's due process claim on the

7  grounds that plaintiff has not sufficiently alleged a property

8  interest in her continued employment.   Plaintiff asserts that she

9  has sufficiently pled a due process claim because she has alleged

10 that after passing her 6-month probationary period she became a

11 tenured employee with a valid property interest in her

12 employment.

13      "The Due Process Clause provides that certain substantive

14 rights — life, liberty, and property — cannot be deprived except

15 pursuant to constitutionally adequate procedures."   Cleveland Bd.

16 of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).   Due process

17 guarantees of the Fourteenth Amendment are implicated only when a

18 constitutionally protected property or liberty interest is at

19 stake.   Sanchez v. City of Santa Ana, 915 F.2d 424, 428 (9th Cir.

20 1990) (citations omitted).   Property interests are not created by

21 the constitution.   Id. (citing Bd. of Regents v. Roth, 408 U.S.

22 564 (1972)).   Rather they are created "by existing rules or

23 understandings that stem from an independent source such as state

24 law."   Id.

25      The California Civil Service Act, Cal. Gov't Code § 18500,

26 et seq., provides that an employee who attains permanent status

27 has a statutory right to continued employment.   Duncan v. Dep't

28 of Personnel Admin., 77 Cal. App. 4th 1166, 1175 (2000) (citing

11

1  Skelly v. State Personnel Bd., 15 Cal. 3d 194 (1975)).  This

2  status requires the state to comply with procedural due process

3  requirements.  Id.  Permanent status is achieved when an

4  employee, who is lawfully retained, completes the requisite

5  probationary period.  Cal. Gov't Code § 18528.  The length of the

6  probationary period is either six months, or a time period

7  determined by the board not to exceed one year.  Id. § 19170.

8       Defendants argue that plaintiff's position as Director of

9  CPS was not a permanent employment position.  Defendants request

10 the court to take judicial notice of the Lassen County job

11 description for Director of CPS and the Lassen County Personnel

12 Rules and Regulations as evidence that plaintiff was an "at will"

13 employee.  (Defs.' Req. for Judicial Notice ¶¶ 7, 8.)  Rule 12(b)

14 states, "[if] matters outside the pleading are presented to and

15 not excluded by the court, the motion [to dismiss] shall be

16 treated as one for summary judgment...and all parties shall be

17 given reasonable opportunity to present all material made

18 pertinent to such a motion under Rule 56."  However, a court may

19 look beyond the complaint to uncontested matters of public record

20 when deciding a motion to dismiss.  Mack v. South Bay Beer

21 Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986),

22 overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v.

23 Solimino, 501 U.S. 104 (1991).

24      The court will not take notice of these documents for the

25 purposes of this motion to dismiss.  In this case, the public

26 entity in control of the documents is also a defendant.  The

27 court cannot assume the authenticity and applicability of the

28 documents without following the provisions of Rule 56, which give

1  both parties a reasonable opportunity to refute the authenticity
2  and content of the documents.[5]  Because the court does not convert
3  this motion to dismiss to a motion for summary judgment, the
4  documents are not relevant to the present motion.

5       Plaintiff alleges that she commenced working for Lassen CPS
6  as a supervisor on May 19, 2003, and was promoted to Director of
7  CPS in November 2003.  Plaintiff further alleges that she
8  completed her six month probationary period in November 2003 and
9  became a "tenured" employee.  (TAC ¶ 48.)  Pursuant to the
10  California Civil Service Act, plaintiff acquired a property
11  interest in her employment once she passed the probationary
12  period and became a permanent employee with a legitimate claim of
13  entitlement to continued employment.  Accepting all allegations
14  in the complaint as true and drawing all reasonable inferences in
15  favor of the plaintiff, the complaint adequately alleges a
16  property interest in plaintiff's employment with the county which
17  is protected under due process.  Therefore, defendants' motion to
18  dismiss plaintiffs § 1983 claim for failure to allege a valid
19  property interest is DENIED.

20       **3.   Fair Employment and Housing Act ("FEHA") Claims**
21            **a.   Individual liability of defendants**

22       Defendants Mannel, Bixby, Whiteman and Chapman move to
23  dismiss plaintiff's FEHA claims against them as individuals.
24  Defendants contend that plaintiff cannot hold them individually
25  liable for discrimination under FEHA.  Under California law,

26  _____

27       [5]    Plaintiff makes very serious, and presently
     unsupported, accusations that the proposed documents from Lassen
28  are doctored.  (Pl.'s Opp'n to Mot. to Dismiss 9.)  The court
     does not consider these accusations at this time and makes no
     ruling on the matter.

1  individual employees cannot be held liable for violations of
2  employment discrimination.  Cal. Gov't Code § 12940(a); <u>Reno v.</u>
3  <u>Baird</u>, 18 Cal. 4th 640 (1998).  Only an employer may be held
4  liable for discrimination.  <u>Id.</u>  Therefore, to the extent
5  plaintiff claims employment discrimination under FEHA, defendants
6  Mannel, Bixby, Whiteman and Chapman's motion to dismiss in their
7  individual capacities is GRANTED.

8       Individuals may be held liable under FEHA for harassment or
9  retaliation.  <u>Winarto v. Toshiba America Electronics Components,</u>
10 <u>Inc.</u>, 274 F.3d 1276, 1288 (9th Cir. 2001); <u>Walrath v. Sprinkel</u>,
11 99 Cal. App. 4th 1237, 1240 (2002).  Plaintiff's third amended
12 complaint includes FEHA claims of retaliation and harassment
13 against defendants Mannel, Bixby, Whiteman and Chapman.  (TAC ¶¶
14 130-44.)  Therefore, plaintiff's inclusion of individual
15 defendants to these claims is permissible.

16              **b.   Timeliness of FEHA claims**

17      Defendants Lassen, Mannel, Bixby, Whiteman, and Chapman move
18 to dismiss plaintiff's FEHA claims because she did not timely
19 file a claim with the Department of Fair Employment and Housing
20 ("DFEH").  This court dismissed plaintiff's earlier FEHA claims
21 for failure to allege timely exhaustion of administrative
22 remedies required by FEHA.  Pursuant to Rule 15(a), the court
23 granted plaintiff leave to amend her second amended complaint to
24 correct any deficiencies found in the pleading.  Plaintiff argues
25 that her third amended complaint repairs the deficiencies present
26 in the previous complaint and properly alleges timely exhaustion
27 of administrative remedies.
28 /////

1    FEHA prohibits discrimination or harassment based on sexual
2  orientation.  Cal. Gov't Code §§ 12940(a), 12940(j).  FEHA
3  further prohibits retaliation against an employee who opposes
4  discrimination or harassment.  Id. § 12940(h).  In order to
5  pursue a judicial remedy for a violation, a claimant must file an
6  administrative claim with the DFEH within one year of the
7  violation's occurrence.  Id. § 12960(d).  When a series of
8  incidents occur, California courts may consider these actions as
9  a single event for purposes of beginning the period of
10 limitations under the continuing violation doctrine.  Richards v.
11 CH2M Hill, Inc., 26 Cal. 4th 798, 801 (2001).  The continuing
12 violation doctrine applies when (1) the actions are sufficiently
13 similar in kind; (2) they occur with sufficient frequency; and
14 (3) they have not acquired a degree of permanence, such as the
15 employee's resignation.  Id.  This doctrine also applies to
16 claims for retaliation and harassment.  Yanowitz v. L'Oreal USA,
17 Inc., 36 Cal. 4th 1028, 1059 (2005).

18    In Richards, an employee brought suit against her employer
19 for disability discrimination.  Richards, 26 Cal. 4th at 801.
20 Plaintiff alleged multiple instances of discriminatory conduct
21 and refusal to accommodate throughout her employment and until
22 her resignation.  Many of the incidents plaintiff relied on
23 occurred outside the period of limitations defined by FEHA.  Id.
24 The court determined the series of incidents should be considered
25 a single action if (1) the actions are sufficiently similar in
26 kind, (2) they occur with sufficient frequency, and (3) they have
27 not acquired a degree of permanence.  The court found the
28 employer's continued pattern of harassment throughout plaintiff's

15

1   employment met the first and second elements.  <u>Id.</u> at 824.  For

2   the final element, the court held permanence is achieved when the

3   employer stops the discriminatory conduct, the employee resigns,

4   or the employee is on notice that further efforts to end the

5   unlawfully conduct are in vain.  <u>Id.</u> at 823.

6      Plaintiff alleges that defendants engaged in retaliatory

7   conduct against her because of her complaints regarding sexual

8   harassment by Bovee and her refusal to discriminate against

9   Snitkin.  (TAC ¶¶ 133.)  Plaintiff also alleges that various

10   employees of Lassen engaged in ongoing sexual orientation

11   harassment by making derogatory comments about her and other

12   homosexuals.  (TAC ¶ 139-40.)  Plaintiff asserts that these

13   events began in November 2003 and continued through her cessation

14   of employment as Director of Lassen CPS in July 2004 and until

15   her termination.  (TAC ¶¶ 130-44.)  Accepting plaintiff's

16   allegations as true, plaintiff sufficiently alleges that

17   defendants created an ongoing environment of harassment,

18   retaliation and discrimination over a period of several months.

19   These actions may be sufficiently similar in type and frequency

20   to constitute a single event thereby giving rise to application

21   of the continuing violation doctrine.

22      Plaintiff argues that defendants' alleged denial of benefits

23   in November 2004 would delay the period of limitations under the

24   continuing violation doctrine.  Plaintiff alleges that she was

25   diagnosed by a psychiatrist as suffering from post traumatic

26   stress disorder, major depression, panic anxiety disorder and

27   agoraphobia.  (TAC ¶ 93.)  She further asserts that she has had a

28   disability from July 27, 2004 until the date of filing this

action.  (TAC ¶ 96.)  Plaintiff alleges that she was assured
during her interview process that Lassen maintained group health
benefits while managerial employees were on disability leave.
(TAC ¶ 30.)  Assuming these facts to be true, plaintiff has
sufficiently asserted facts that lead to a reasonable assumption
that plaintiff was on disability leave after July 27, 2004.
Plaintiff also asserts that her benefits were denied because of
the ongoing discrimination, harassment and retaliation of
defendants.  (TAC ¶¶ 134, 143.)  The court can reasonably infer
from these allegations that permanence regarding the violation of
plaintiff's rights may not have occurred until her benefits were
denied during disability leave.  Such a showing could give rise
to the application of the continuing violation doctrine.
Plaintiff filed a complaint with the DFEH in June 2005.[6]  November
2004 falls within one year of June.  Therefore, plaintiff has
sufficiently pled timely compliance under FEHA.

Alternatively, plaintiff also alleges that, at a minimum,
she was on sick leave and/or vacation until July 27, 2004.  (TAC
¶ 95.)  Assuming that plaintiff was still an employee until July
27, 2004, she has alleged sufficient facts to argue that
permanence was not achieved before that time, thereby giving rise
to application of the continuing violation doctrine.  July 27,
2004 falls within one year of June 2005.  Therefore, even if
plaintiff had not alleged timeliness regarding the November 2004
/////

---

[6]    Plaintiff filed an additional complaint with the DFEH
on January 28, 2006.  Because plaintiff has alleged sufficient
facts to support timely filing of her FEHA claims based on her
June 2005 DFEH complaint, the court does not consider the
timeliness of her January 28, 2006 DFEH complaint at this time.

1  denial of benefits, she has still pled timely compliance under

2  FEHA.[7]

3          **b.   Harassment**

4       Defendants Lassen, Mannel, Bixby, Whiteman, and Chapman move

5  to dismiss plaintiff's sexual orientation harassment claim for

6  failure to state a claim.  Defendants argue that plaintiff does

7  not allege a sufficiently severe and/or pervasive environment to

8  claim hostile work environment harassment.  Defendants also argue

9  that the complaint does not allege that any of the individual

10  defendants engaged in discriminatory name-calling.

11       FEHA prohibits harassment based on sexual orientation.  Cal.

12  Gov't Code §12940(j).  However, when pleading employment

13  discrimination, a plaintiff need not allege a prima facie case

14  with particularity so long as the allegations give defendants

15  notice of and the basis for the charges against them.

16  Swierkiewicz v. Soreman, 534 U.S. 506, 508, 512 (2002).  To

17  sufficiently plead a prima facie case for a violation of FEHA

18  based on hostile work environment, plaintiff must allege that the

19  "workplace [was] permeated with discriminatory intimidation ...

20  that [was] sufficiently severe or pervasive to alter the

21  conditions of [her] employment and create an abusive working

22  environment."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21

23

24

25

26       [7]   Plaintiff further contends that the March 2004 phone
    call to DFEH raises issues of equitable tolling.  Because
27  plaintiff has alleged facts sufficient to survive a motion to
    dismiss under the continuing violation doctrine, the court does
28  not address her equitable tolling argument.  However, this does
    not preclude plaintiff from raising the argument later in the
    litigation.

1  (1993) (internal citations omitted);[8]  <u>Fisher v. San Pedro</u>
2  <u>Peninsula Hosp.</u>, 214 Cal. App. 3d 590, 609 (1989).  Acts of
3  harassment cannot be occasional, isolated, sporadic or trivial.
4  <u>Id.</u>  The severe and pervasive requirement applies to sexual
5  orientation harassment.  <u>Murray v. Oceanside Unified School</u>
6  <u>Dist.</u>, 79 Cal. App. 4th 1338, 1361 (2000).  A plaintiff
7  personally subjected to derogatory remarks may sufficiently
8  establish a hostile work environment.  <u>Hope v. California Youth</u>
9  <u>Auth.</u>, 134 Cal. App. 4th 577, 590 (2005) (citing <u>Fisher</u>, 214 Cal.
10 App. 3d at 610-11).  Supervisors with the authority to control
11 the environment may be held personally liable for harassment in
12 violation of FEHA if they tacitly approved of the actions or if
13 they were aware of the harassment and failed to take action to
14 prevent it.  <u>Matthew v. Superior Court</u>, 34 Cal. App. 4th 598, 604
15 (1995).

16      Plaintiff alleges that employees of Lassen directed
17 derogatory comments regarding her sexual orientation toward her
18 and others while in her presence.  (TAC ¶¶ 49-50.)  Plaintiff
19 asserts that this behavior was ongoing and frequent.  (TAC ¶¶
20 139-40.)  Plaintiff alleges that she repeatedly contacted
21 defendants Margolies and Whiteman complaining about this ongoing
22 sexual orientation harassment and that they did nothing to
23 resolve the issue.  (TAC at Ex. 7.)  Plaintiff includes a letter
24 alleging that defendant Bixby knew about the harassing behavior
25 when he became her supervisor and was complicit in the plan to

26 

27      [8]      Because the anti-discrimination objective and relevant
   wording of Title VII and § 1981 are similar to those of FEHA,
28 "California courts often look to federal decisions interpreting
   these statutes for assistance in interpreting the FEHA."
   <u>Richards</u>, 26 Cal. 4th at 812.

1  force her out of CPS.  (TAC at Ex. 11.)  Plaintiff alleges that

2  defendants Mannel, Whiteman and Chapman entered into an agreement

3  to create intolerable working conditions because of her sexual

4  orientation and gender.[9]  (TAC ¶¶ 67-68.)  Plaintiff asserts

5  defendants Mannel, Whiteman and Chapman then provided defamatory

6  information to the Lassen County Times regarding her performance

7  at CPS.  (TAC ¶ 77 and Ex. 11.)  Plaintiff asserts that Mannel

8  made defamatory comments about her during staff meetings while

9  she was on leave.  (TAC ¶ 90.)  Plaintiff also asserts that

10 Mannel destroyed her personal property, such as diplomas and

11 certificates.[10]  (TAC ¶ 91.)  These allegations sufficiently

12 assert that defendants Lassen, Mannel, Bixby and Whiteman engaged

13 in conduct that could have created a severe and pervasive hostile

14 work environment.  As supervisors, defendants Bixby and Whiteman

15 are personally liable if they knew of the harassing behavior and

16 did nothing to stop it.  Matthews, 39 Cal. App. 4th at 604.  In

17 regards to plaintiff's claims against defendant Mannel, plaintiff

18 has alleged that he committed specific acts of harassment through

19 his comments and destruction of property.  Under the broad notice

20 pleading standard set forth by the Federal Rules of Civil

21 Procedure, plaintiff has alleged a scenario where it may be

22 reasonably inferred that the defendants' conduct was harassing

23 ——————————

24        [9]   Plaintiff also claims her refusal to hire Mannel's wife
   was a motivating factor.  This refusal is not a protected
25 activity under FEHA.  However, plaintiff has sufficiently alleged
   that defendants relied on prohibited motivations as well.

26        [10]   Defendant Mannel argues that plaintiff did not include
   his derogatory comments in her DFEH complaint; therefore, she
27 cannot raise a FEHA complaint based on those actions.  This
   argument is unpersuasive.  Plaintiff included "harassment" as a
28 base for her complaint, and Mannel's alleged comments could be a
   form of harassment.

1   and, at least in part, motivated by her sexual orientation.

2   Therefore, defendants Lassen, Mannel and Whiteman's motion to

3   dismiss plaintiff's FEHA claim for harassment is DENIED.

4       However, plaintiff has not sufficiently asserted a claim of

5   harassment by defendant Chapman.  Plaintiff's only allegation

6   against defendant Chapman is that he made defamatory statements

7   to the Lassen County Times.  This allegation by itself does not

8   sufficiently give rise to a claim for harassment in violation of

9   FEHA against Chapman.  Furthermore, plaintiff has not alleged

10  that Chapman was a supervisor with any control over the hostile

11  environment.  <u>Cf.</u> <u>Matthew</u>, 34 Cal. App. 4th at 604.  As such,

12  defendant Chapman's motion to dismiss plaintiff's claim of

13  harassment in violation of FEHA is GRANTED.

14          **c.   Retaliation**

15      Defendants Lassen, Mannel, Bixby, Whiteman, and Chapman move

16  to dismiss plaintiff's FEHA retaliation claim because she does

17  not assert sufficient facts to state a claim for relief.

18  Specifically, defendant Mannel asserts that the allegations in

19  the complaint do not sufficiently link the alleged retaliatory

20  conduct to any protected activity.

21      FEHA prohibits retaliation against an employee who opposes

22  discrimination or harassment.  Cal. Gov't Code § 12940(h).  In

23  the instant case, plaintiff asserts that her constructive

24  termination resulted from defendants retaliation against her for

25  her refusal to discriminate against Snitkin based on his HIV

26  status and her complaints regarding Bovee's harassment.

27  Plaintiff's third amended complaint specifically alleges that

28  defendants Mannel, Whiteman and Chapman entered into an agreement

to force plaintiff to quit or take disability leave.  (TAC ¶¶ 68-
69.)  The allegations of harassing conduct by defendants Lassen,
Mannel and Whiteman described above could have contributed to
plaintiff's eventual constructive termination.  Plaintiff also
alleges defendant Bixby was involved in a plan to force her out
in retaliation for her refusal to hire Snitkin and her complaints
about Bovee.  (TAC ¶ 133.)  Specifically, plaintiff alleges Bixby
ended her authority over CPS by demanding that she refrain from
contacting any CPS staff.  (TAC ¶ 92.)  At the pleading stage,
the court may reasonably infer that the alleged actions of
Mannel, Whiteman and Bixby contributed to plaintiff's
constructive termination.  It may also be reasonably inferred
from plaintiff's allegations that those actions were taken, at
least in part, in retaliation for plaintiff's refusal to
discriminate against Snitkin and her complaints about Bovee.  As
such, plaintiff's complaint sufficiently alleges that defendants
Lassen, Mannel, Whiteman and Bixby engaged in conduct in
retaliation for plaintiff's protected activities under the broad
notice pleading standard set forth in the Federal Rules of Civil
Procedure.  Therefore, defendants Lassen, Mannel, Whiteman and
Bixby's motion to dismiss plaintiff's FEHA claim for retaliatory
conduct is DENIED.

     However, plaintiff has again not sufficiently asserted a
claim of retaliation by defendant Chapman.  Plaintiff alleges
that Chapman may have contributed to defamatory statements to the
Lassen County Times and also stated that plaintiff "would be gone
in 30 days".  (TAC ¶¶ 76-77 and Ex. 11.)  These allegation do not
sufficiently allege that Chapman took any actions that

1  contributed to plaintiff's constructive termination.  Nor does

2  plaintiff allege that Chapman had any authority over her

3  employment at CPS.  As such, defendant Chapman's motion to

4  dismiss plaintiff's claim of retaliation in violation of FEHA is

5  GRANTED.

6      **4.   Title VII Claims**

7      Defendant Lassen moves to dismiss plaintiff's claims for

8  hostile work environment and retaliation violations under 42

9  U.S.C. §§ 2000e *et seq.* ("Title VII").  Defendant asserts that

10 plaintiff did not comply with a mandatory provision to timely

11 pursue an administrative remedy with the EEOC.

12     Title VII claims must comport with EEOC filing requirements.

13 42 U.S.C. § 12117(a).  When a state claim has been filed, the

14 EEOC filing deadline is 300 days after the alleged violation.

15 Id. § 2000e-5(e)(1).  Therefore, a party must file a charge

16 within 300 days of the date of the act or lose the ability to

17 recover for it.  National R.R. Passenger Corp. v. Morgan, 536

18 U.S. 101, 110 (2002).  The Supreme Court differentiates between

19 discrete acts of discrimination and ongoing acts of work

20 environment harassment.  Id. at 117.  If an act contributing to a

21 hostile work environment claim occurs within the filing period,

22 the entire time period of the hostile environment may be

23 considered by the court.  Id.  In contrast, for claims of

24 discrimination or retaliation:

25         discrete discriminatory acts are not actionable if time
           barred, even when they are related to acts alleged in

26         timely filed charges. Each discrete discriminatory act
           starts a new clock for filing charges alleging that

27         act. The charge, therefore, must be filed within the
           ... 300-day time period after the discrete

28         discriminatory act occurred.

1 <u>Porter v. California Dept. of Corr.</u>, 419 F.3d 885, 891-92 (9th
2 Cir. 2005) (citing <u>Morgan</u>, 536 U.S. at 122).  However, events
3 outside of the 300-day time period may be used as supporting
4 evidence to show that actions occurring within the period of
5 limitations were discriminatory or retaliatory.  <u>Id.</u>

6      In the present case, plaintiff's third amended complaint
7 asserts hostile work environment and retaliation claims under
8 Title VII.  Plaintiff filed her Title VII claims with the EEOC on
9 July 12, 2005.[11]  (TAC ¶ 107.)  Because plaintiff filed a state
10 claim, the EEOC filing deadline requires all claims to have
11 accrued within the preceding 300 days.  In this case, plaintiff's
12 claims must have accrued on or after September 14, 2004.  The
13 court reviews each claim in turn.

14                **a.   Hostile Work Environment**

15      Plaintiff asserts that she was subject to a hostile work
16 environment because of Lassen's sex-based harassment.  A Title
17 VII hostile work environment claim may include events occurring
18 before the period of limitations if an event contributing to the
19 claim occurs within the filing period.  <u>Morgan</u>, 536 U.S. at 117.
20 Plaintiff alleges that Lassen employees discriminated against and
21 harassed her because of her gender.  (TAC ¶¶ 67-68, 82-84, 90,
22 91.)  Plaintiff also alleges that Whiteman, Lassen's Chief
23 Administrative Officer, sought to create an environment where men
24 held positions of power and authority.  (TAC ¶ 81.)  Plaintiff
25 also alleges Lassen had a pattern of harassing and discriminating

26 _____

27      [11]   Plaintiff filed an additional complaint with the EEOC
   on March 13, 2006.  Because plaintiff has alleged sufficient
28 facts to support timely filing of her EEOC claims based on her
   July 12, 2005 EEOC complaint, the court does not consider the
   timeliness of her March 13, 2006 complaint at this time.

                              24

against women.  (TAC at Ex. 9.)  Finally, plaintiff alleges that
defendant Lassen denied her benefits in November 2004 as part of
an ongoing practice that created a hostile work environment.
(TAC ¶ 99.)  Taken together, these allegations may reasonably
support the claim that plaintiff was subjected to a hostile work
environment by employees of Lassen because she was a woman.
Plaintiff's alleged denial of benefits in November 2004 may be
considered a final component of the cumulative harassment that
led to her terminations.  As such, plaintiff has sufficiently
pled sufficient actions to support a claim of harassment that
occurred within the period of limitations.  Therefore,
defendant's motion to dismiss plaintiff's Title VII hostile work
environment claim is DENIED.

           **b.   Retaliation**

     Plaintiff asserts a claim for retaliation in violation of
Title VII.  Defendant argues that plaintiff has not pled
sufficient facts to support a Title VII retaliation claim.

     Title VII prohibits discrimination on the basis of race,
color, religion, sex, or national origin.  42 U.S.C. § 2000e-
2(a)(1).  When pleading employment discrimination in violation of
Title VII, a plaintiff does not need to allege a prima facie
case.  Swierkiewicz, 534 U.S. at 508.  The complaint must contain
only a short and plain statement stating what the claim is and
the grounds upon which it rests.  Id. at 512.

     Plaintiff alleges that defendant Lassen harassed her with
the intention of forcing her to quit work because of the
complaints she made about the behavior of Bovee and other
employees.  (TAC ¶ 165-66).  Drawing all reasonable inferences

1  from the allegations in the complaint in favor of plaintiff,

2  plaintiff alleges that Bovee's false sexual harassment claim was

3  a form of harassment against her because of her sexual

4  orientation and gender.  Title VII does not prohibit

5  discrimination or harassment based on sexual orientation, but

6  does prohibit harassment on the basis of gender.  42 U.S.C. §

7  2000e-2(a)(1).  Plaintiff asserts that she complained about the

8  false sexual harassment claims by Bovee and that she was

9  subsequently terminated because of these complaints.  Under the

10 broad pleading standard required for employment discrimination,

11 plaintiff has sufficiently alleged a claim of retaliation in

12 violation of Title VII.  Therefore, defendant's motion to dismiss

13 plaintiff's Title VII retaliation claim is DENIED.

14           **5.   Americans with Disabilities Act.**

15      Plaintiff alleges discrimination and failure to accommodate

16 in violation of the ADA.  Defendant Lassen argues that

17 plaintiff's claim is invalid because it does not meet the EEOC

18 filing requirements.  Defendant also argues that the claim is not

19 supported by facts asserted in the complaint.

20      The time requirements for plaintiff's EEOC filing for claims

21 of ADA violations are the same requirements as under her claims

22 of Title VII violations; thus, events occurring before September

23 14, 2004 are not actionable as an ADA claim.  However, plaintiff

24 may assert facts occurring before September 14, 2004 as evidence

25 in support of other timely claims.  <u>Porter</u>, 419 F.3d at 891-92.

26 As set forth above, plaintiff alleges that she had a disability

27 from July 27, 2004 through the date of filing the instant action.

28 Plaintiff also alleges that defendant discontinued her health

benefits in November 2004 because of her disability.  As such,
Plaintiff sufficiently alleges that a discrete act of
discrimination occurred within the EEOC filing period.
Therefore, plaintiff has sufficiently pled timely compliance with
the EEOC filing requirement.

      To state a claim for relief under the ADA, a plaintiff must
establish: (1) that she is a disabled person within the meaning
of the ADA; (2) that she is able to perform the essential
functions of the job (with or without accommodation); and (3)
that the employer terminated her because of her disability.
Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir.
1999).  An ADA claim must follow the same EEOC filing deadlines
as the Title VII claims described above.  42 U.S.C. § 12117(a).

      Plaintiff alleges that she is disabled and was capable of
performing her job duties with reasonable accommodations.  (TAC
¶¶ 20, 21, 88, 93, 95, 97, 155, 156, 159.)  Plaintiff also
alleges that defendant Lassen was aware of and failed to
accommodate her disability and that she was fired because of her
disability.  (TAC ¶¶ 20, 21, 157-61.)  Plaintiff asserts that she
repeatedly asked Lassen supervisors and managers to investigate
false sexual harassment charges against her and that their
failure to do so exacerbated her disability.  (TAC ¶¶ 58, 62.)
Taking all plaintiff's allegations as true, she has sufficiently
pled substantive facts that could give rise to a claim for
violation of the ADA.

      Defendant argues that plaintiff's claim fails because she
did not adequately inform Lassen of her required accommodations.
Defendant also argues that requesting an accommodation to provide

27

1  a stress-free environment would be ludicrous.  These arguments
2  seeking for the court to adjudicate the merits of plaintiff's
3  claims are not appropriately considered by the court on a motion
4  to dismiss.  Plaintiff has sufficiently alleged elements
5  necessary for an ADA claim.  Therefore, defendant's motion to
6  dismiss plaintiff's ADA claim is DENIED.

7       **6.   Slander**

8       Defendants move to dismiss plaintiff's slander claim on the
9  grounds that plaintiff failed to sufficiently plead the substance
10 of her slander claim.  Under California Civil Code § 46, "slander
11 is a false publication, orally uttered...which...(3)tends
12 directly to injure him in respect to his office, profession,
13 trade or business, either by imputing to him general
14 disqualification in those respects which the office or other
15 occupation peculiarly requires."  The statutory definition of
16 slander is very broad and includes any language which, on its
17 face, has a natural tendency to injure a person with respect to
18 her occupation.  Sempler v. Andrews, 27 Cal. App. 2d 228, 232
19 (1938).

20      Plaintiff alleges that defendants Mannel, Whiteman, Bixby
21 and Chapman made, or conspired to make, false, defamatory
22 statements regarding her professionalism.  (TAC ¶¶ 203-205.)
23 Defendants claim plaintiff has not pled sufficient facts to
24 support a claim of slander.  However, defendants' reliance on the
25 unreported case Jones v. Thyssenkrupp Elevator Corp. is
26 unpersuasive.  2006 U.S. Dist. LEXIS 13978 (N.D. Cal. 2006).  In
27 Jones, the plaintiff failed to identify the speakers, the
28 recipients or the timing of the defamatory remarks.  Id. at *17.

28

1  Here, plaintiff specifically asserts that Whiteman, Mannel,
2  Chapman and "possibly others" made false and defamatory comments
3  about her management of CPS.  (TAC ¶76.)  These statements
4  resulted in a newspaper article calling for the replacement of
5  plaintiff as director of CPS.  (TAC at Ex. 13.)  Plaintiff gives
6  an approximate date of April or May 2004 regarding the comments
7  to the Lassen County Times.  Plaintiff also gives a date range
8  from June 1, 2004 through August 15, 2004 regarding derogatory
9  comments made by Mannel at staff meetings.  (TAC ¶¶ 76, 206.)  As
10 such, plaintiff's claim properly asserts a claim of slander.  The
11 complaint provides sufficient notice to defendants of what they
12 are charged with and the grounds for relief as required by Rule
13 8(a).  Therefore, defendants' motion to dismiss plaintiff's
14 slander claim is DENIED.

15 **B.    Leave to Amend**

16      The court interprets plaintiff's third amended complaint as
17 a request for leave to amend with regard to plaintiff's
18 previously unidentified claims.  At this early stage of
19 litigation, granting leave to amend will not unduly burden
20 defendants.  Further, there is no evidence that the request is
21 made in bad faith.  Plaintiff makes a legitimate request
22 following substitution of counsel.  Consequently, plaintiff's
23 request for leave to amend requires an analysis of whether the
24 claims are futile.

25      **1.    Equal Pay**

26           **a.    Title VII**

27      Plaintiff includes a new claim under Title VII
28 discrimination in compensation.  This claim follows the EEOC

1  filing requirements discussed above.  Plaintiff sufficiently
2  alleges facts that may support the assertion she was an employee
3  on disability leave until November 2004.  As such, defendant's
4  alleged discrimination in compensation would extend into the
5  period of limitations required by the EEOC filing deadline.  The
6  court cannot at this time consider defendant's assertion that
7  plaintiff received her last discriminatory paycheck outside the
8  period of limitations.  Because plaintiff has asserted facts
9  which, if true, would show timely compliance with the EEOC filing
10 deadline, her Title VII discrimination in compensation claim is
11 not futile.  Therefore, plaintiff's motion for leave to amend is
12 GRANTED.

13          **b.   Federal Equal Pay Act, 29 U.S.C. § 206 and
               California Equal Pay Act, Labor Code § 1197.5**
14

15      Plaintiff seeks to amend her complaint to add a claim for
16 unequal pay based on gender in violation of the Federal Equal Pay
17 Act and the California Equal Pay Act.  (TAC ¶¶ 181-92.)  These
18 acts prohibit an employer from discriminating between employees
19 on the basis of sex by paying different wages.  29 U.S.C. §
20 206(d); Cal. Labor Code § 1197.5.  If employees of the opposite
21 sex are employed in equal work on jobs requiring equal skill,
22 effort and responsibility, and those jobs are performed in
23 similar working conditions, then the employer must pay them
24 equally.  Id.

25      Plaintiff alleges that (1) she was engaged in jobs with men
26 requiring equal skill, effort and responsibility, (2) the jobs
27 were performed under similar working conditions, and (3) Mannel,
28 a man, was paid a higher wage than her for such work.  (TAC ¶¶

30

1  181-86.)  Based upon the allegations in the proposed complaint,
2  the court cannot determine that the claims are futile.  Therefore
3  plaintiff's motion for leave to amend is GRANTED.

4                **c.   FEHA Discrimination in Compensation**

5       Plaintiff seeks to amend her complaint to assert
6  discrimination in compensation in violation of Cal. Gov't Code §
7  12940(a).  FEHA prohibits an employer from discriminating in
8  compensation or privileges of employment because of sex.  <u>Id.</u>  As
9  described above, FEHA requires a claimant to exhaust
10  administrative remedies within one year of injury.  <u>Id.</u> §
11  12960(d).

12       Plaintiff alleges that Lassen paid her lower compensation
13  because she is a woman.  (TAC ¶¶ 193-200.)  Plaintiff alleges
14  that Mannel was paid more for the same level of responsibility
15  and job duties.  (TAC ¶ 83.)  She further alleges that Lassen
16  gave preferential treatment to men regarding positions of
17  authority.  (TAC ¶ 81.)  These allegation could give rise to a
18  claim for which relief may be granted under FEHA.  Plaintiff
19  submitted a copy of her gender discrimination and equal pay
20  complaint to the DFEH dated June 27, 2005.  (TAC Ex. 17.)  The
21  complaint identified "denied equal pay" as one of the categories
22  of harm.  (<u>Id.</u>)  For the reasons set forth in this order
23  regarding plaintiff's other FEHA claims, plaintiff sufficiently
24  alleges timely compliance with FEHA's administrative filing
25  requirement.  As such, plaintiff's claim is not futile, and her
26  motion for leave to amend is GRANTED.
27  /////
28  /////

1        **2.   Negligent Infliction of Emotional Distress**

2        Plaintiff moves to amend her complaint to include a claim

3   against defendants for Negligent Infliction of Emotional Distress

4   ("NIED") against defendants Lassen, Mannel, Bixby, Whiteman,

5   Chapman, Margolies and the Lassen Board of Supervisors.  (TAC ¶¶

6   210-12.)  Defendants contend that the exclusive remedy clause of

7   the California Workers' Compensation Act bars the claim.

8        The California Workers' Compensation Act provides the

9   exclusive remedy for injuries sustained under the normal

10  conditions of employment.  Cal. Lab. Code § 3601.  Where an

11  employee falls within the protection of the Workers' Compensation

12  scheme, as laid out in Labor Code § 3600, the code precludes a

13  cause of action against the employer.  Id.  This prohibition

14  extends to emotional injuries such as intentional infliction of

15  emotional distress and NIED.  Cole v. Fair Oaks Fire Protection

16  District, 43 Cal. 3d 148, 160 (1987).

17       The California Supreme Court warned that exceptions to the

18  exclusive remedy provision risks undermining the legislative

19  compromise of the Workers' Compensation Act by permitting the

20  employee to pursue a cause of action merely by tailoring the

21  claim to fall within the scope of the exception.  Id. at 160.

22  The doctrine therefore requires emotional injuries to fall within

23  the exclusive remedy provision of § 3601 so long as the basic

24  conditions of § 3600 are met and the employer's conduct does not

25  contravene fundamental public policy or *exceed the risks inherent*

26  *in the employment relationship*.  Livitsanos v. Superior Court, 2

27  Cal. 4th 744, 815 (1992).

28  /////

1          The California Supreme Court held that a claim alleging

2    violation of FEHA and a claim of wrongful discharge due to

3    discrimination both fall outside the scope of Labor Code §§ 3600

4    and 3601.  <u>City of Moorpark v. Superior Court</u>, 18 Cal. 4th 1143,

5    1148 (1998).  Emotional injuries arising from discrimination and

6    harassment are by nature outside the scope of the employment

7    relationship and are not precluded by the exclusive remedy

8    provisions of the Workers' Compensation Act.  <u>Taylor v. Beth Eden</u>

9    <u>Baptist Church</u>, 294 F. Supp. 2d 1074, 1080 (N.D. Cal. 2003)

10   (citing <u>Yanowitz v. L'Oreal USA, Inc.</u>, 131 Cal. Rptr. 2d 575

11   (2003) (holding that exclusivity did not apply to claim for

12   negligent infliction of emotional distress against employer based

13   on allegation that employer had retaliated against plaintiff for

14   refusing to fire female sales associate who plaintiff's

15   supervisor thought was unattractive); <u>Fretland v. County of</u>

16   <u>Humboldt</u>, 69 Cal. App. 4th 1478, 1491-92 (1999) (holding that

17   work-related injury discrimination is not a normal risk of the

18   compensation bargain and therefore, claims for negligent and

19   intentional infliction of emotional distress against employer

20   were not barred by exclusivity rule); <u>Accardi v. Superior Court</u>,

21   17 Cal. App. 4th 341 (1993)(holding that claim for intentional

22   infliction of emotional distress against employer based on

23   alleged harassment was not barred by the exclusivity rule because

24   sexual harassment was "outside the normal employment

25   environment")).  By properly pleading a harassment claim, a

26   plaintiff will also have sufficiently pled facts supporting an

27   emotional injury claim.  <u>See</u>, <u>Fisher v. San Pedro Peninsula</u>

28   <u>Hosp.</u>, 214 Cal. App. 3d 590, 609 (1989); <u>Maffei v. Allstate</u>

1  <u>California Ins. Co.</u>, 412 F. Supp. 2d 1049, 1056 (finding that
2  plaintiff's allegations that defendant terminated them for
3  failure to engage in illegal action was sufficient allegation
4  that defendant's conduct contravened public policy such that
5  claim was not barred by the exclusive Workers' Compensation
6  remedies).

7      Defendants argue that plaintiff's NIED claim should be
8  barred because plaintiff did not oppose defendants' motion to
9  dismiss her intentional infliction of emotional distress ("IIED")
10 claim in the second amended complaint.  This argument is
11 unpersuasive.  Plaintiff's NIED claim is a different claim for
12 relief than IIED and is based on different theories with
13 different elements.  As such, plaintiff has not conceded that it
14 is barred by the Workers' Compensation Act.

15     As described above, plaintiff has properly pled claims for
16 violations of FEHA against defendants Lassen, Mannel, Bixby and
17 Whiteman.  Discrimination and harassment in violation of FEHA
18 fall outside the scope of the employment relationship.
19 Therefore, plaintiff has already pled facts that could give rise
20 to a claim of NIED against Lassen, Mannel, Bixby and Whiteman.
21 Similarly, plaintiff has also asserted a claim against Margolies,
22 as well as the previously named defendants, for violation of her
23 first amendment rights and due process rights under 42 U.S.C. §
24 1983.  Therefore, plaintiff has pled facts that could give rise
25 to the assertion that Margolies' actions contravened public
26 policy and were outside the employment relationship.

27     Because plaintiff's claim for NIED against defendants
28 Lassen, Mannel, Bixby, Whiteman, and Margolies might not be

1  barred by the Workers' Compensation Act, it is not futile.

2  Therefore, plaintiff's motion for leave to amend regarding her

3  NIED claim against defendants Lassen, Mannel, Bixby, Whiteman,

4  and Margolies is GRANTED.

5       Plaintiff has not asserted that defendants Chapman or the

6  Lassen Board of Supervisors[12] acted in contravention of public

7  policy.  Consequently, plaintiff's NIED claim against Chapman and

8  the Lassen Board of Supervisors is barred by the exclusive remedy

9  provision of the Workers' Compensation Act.  See Cole, 43 Cal. 3d

10 at 160.  Therefore, plaintiff's motion for leave to amend

11 regarding her NIED claim against defendants Chapman and the

12 Lassen Board of Supervisors is DENIED.

13        **3.    Conversion of Personal Property**

14      Plaintiff seeks to include a claim for relief against Mannel

15 for conversion of personal property.  (TAC ¶¶ 213-15.)  Defendant

16 contends that the conversion claim is futile because plaintiff

17 failed to comply with the California Tort Claims Act ("CTCA").

18 Specifically, defendant asserts that plaintiff did not file a

19 timely claim notifying Lassen County of the property damage.

20 (Id. at 25.)

21      In order to state a tort claim against a public entity or

22 public employee, the CTCA requires plaintiff to present claims to

23 the government entity for money or damages with few exceptions.

24 Cal. Gov't Code § 905.  Tort claims such as the instant claim for

25 personal property damage are not listed among the exceptions to

26

27        [12]    Plaintiff voluntarily dismissed all claims against
   defendants Pyle, Keifer, Dahle, and Hanson in their official
28 capacities as members of the Lassen Board of Supervisors.
   Chapman is the sole member of the Board of Supervisors who is
   still a party to this action.

1 § 905.   Moreover, under Government Code § 945.4,

2          no suit for money or damages may be brought against a
3          public entity on a cause of action for which a claim is
           required to by presented in accordance with Chapter 1
4          (commencing with section 900) and Chapter 2 (commencing
           with section 910) of Part 3 of this division until a
5          written claim therefore has been presented to the
           public entity and has been acted upon by the board, or
6          has been deemed to have been rejected by the board.

7 Cal. Gov't Code § 945.4.   The CTCA requires a claimant to file a

8 request for damages for injury to personal property with the

9 government entity not later than six months after the accrual of

10 the cause of action.   Id. § 911.2.   Under § 950.2, any suit

11 against a public employee is barred in cases where a plaintiff's

12 action against the agency would be barred for failure to present

13 a claim.   The comments to the 1965 Amendment to § 950.2 state

14 "the presentation of a claim to the employing public entity is a

15 prerequisite to suit against an employee."   Ann. Cal. Gov't Code

16 § 950.2.

17       Plaintiff has the burden of pleading compliance with the

18 California Tort Claims Act in her complaint.   Wood v. Riverside

19 General Hospital, 25 Cal. App. 4th 1113, 1119 (1994).   Moreover,

20 compliance with the California claims statutes is mandatory.

21 City of San Jose v. Superior Court, 12 Cal. 3d 4447, 454 (1974).

22 Federal courts have recognized these requirements.   See Ortega v.

23 O'Connor, 764 F.2d 701, 707 (9th Cir. 1985), rev'd on other

24 grounds, 107 S.Ct. 1492 (1987) (failure to comply with claim-

25 filing requirements imposed by California Tort Claims Act bars

26 pendent state claims).

27       The details of the claim need only allege a general

28 complaint with sufficient detail to reasonably enable the public

36

1  entity to make an adequate investigation.  <u>Blair v. Superior</u>
2  <u>Court</u>, 218 Cal. App. 3d 221, 225 (1990).  However, if plaintiff
3  seeks to recover from a different cause of action based upon an
4  entirely different set of facts, plaintiff must timely file a
5  separate claim according to the provisions of the CTCA.  <u>Fall</u>
6  <u>River Joint Unified School District v. Superior Court</u>, 206 Cal.
7  App. 3d 431, 590 (1988).

8       Plaintiff's third amended complaint identifies Mannel as a
9  public employee, Lassen County's Director of Mental Health.  (TAC
10 ¶ 5.)  Plaintiff alleges that Mannel destroyed diplomas and other
11 personal property in her office in June of 2004.  (TAC ¶¶ 91,
12 214.)  Even if the court assumes these allegations to be true,
13 the CTCA requires plaintiff to file a damage claim with the
14 county within six months of the incident.  Although plaintiff
15 filed multiple damage claims with Lassen County, there is no
16 evidence that she made even a general claim for personal property
17 damage.  (TAC Exs. 15, 22.)  Plaintiff must make a separate claim
18 for property damages before she can pursue the conversion claim.
19 No such claim appears in plaintiff's third amended complaint, and
20 the time limit for filing the claim has passed.  Plaintiff did
21 not address her failure to comply with th CTCA in her opposition.
22 Therefore, plaintiff's claim for conversion of personal property
23 is futile.  Plaintiff's motion for leave to amend is DENIED

24      **4.   Violation of COBRA**

25      Plaintiff seeks to assert a claim for recovery based on
26 Lassen's November 2005 denial of continuing health benefits under
27 the Consolidated Omnibus Budget Reconciliation Act ("COBRA").
28 /////

1  (TAC ¶¶ 110-11, 216-19.)  Defendant contends that plaintiff was
2  not eligible to receive COBRA benefits when she made the request.

3       COBRA requires employers to provide employees the option to
4  continuing health coverage equal to the coverage provided during
5  employment.  29 U.S.C. § 1162; Coble v. Bonita House, Inc., 789
6  F. Supp. 320, 322 (N.D. Cal. 1992).  However, the employer need
7  only provide access to the same plan the employee held
8  previously.  The employer does not need to pay the premiums for
9  the employee.  29 U.S.C. § 1162(3).  In the event a beneficiary
10 fails to make a timely premium payment, the employer may end the
11 continuation of benefits.  Id. § 1162(2)©.

12      Plaintiff alleges that Lassen denied her group health care
13 benefits in November 2004.  (TAC ¶ 99.)  Plaintiff references
14 Exhibit 14, a letter from Ronald Vossler, as evidence of this
15 denial of benefits.[13]  The letter is a notification of payments
16 due by plaintiff on premiums under the health plan.  (TAC Ex.
17 14.)  COBRA does not require Lassen to make such payments.  29
18 U.S.C. § 1162(3).  Plaintiff was notified that she was
19 responsible for her own premium payments.  Therefore, her failure
20 to pay those premiums would have forfeited her right to COBRA
21 benefits.  Plaintiff's third complaint fails to allege facts that
22 give rise to a violation of COBRA.  However, the court cannot
23 find that plaintiff's COBRA claim is necessarily futile.  It is
24 possible that plaintiff could amend the complaint to sufficiently

25

26      [13]    Plaintiff alleges that defendant wrongly denied her
   benefits while she was on disability leave.  Whether or not
27 defendant was responsible for maintaining premium payments on
   behalf of defendant during a disability leave is irrelevant to
28 the issue of a COBRA violation.  See Roberts v. Union Pacific R.
   Co., 16 F. App'x 730, 734 (9th Cir. 2001) (unpublished).

                                 38

state a claim for violation of COBRA.  Therefore, plaintiff's
motion for leave to amend is GRANTED.

**CONCLUSION**

Based on the foregoing analysis, the court makes the
following orders:

A.   As to the defendants' motion to dismiss:

    (1)   Defendant Crosby's motion to dismiss all claims against
her is GRANTED.

    (2)   Defendants Lassen, Mannel, Bixby, Whiteman, Margolies
and Chapman's motion to dismiss 42 U.S.C. § 1983 due
process claim is DENIED.

    (3)   Defendants Mannel, Bixby and Whiteman's motion to
dismiss FEHA claims is:

        (a)   DENIED as to plaintiff's FEHA retaliation claim;

        (b)   DENIED as to plaintiff's FEHA harassment claim;

        (c)   GRANTED to the extent plaintiff claims employment
discrimination.

    (4)   Defendants Chapman's motion to dismiss FEHA claims is:

        (a)   GRANTED as to plaintiff's FEHA retaliation claim;

        (b)   GRANTED as to plaintiff's FEHA harassment claim;

        (c)   GRANTED to the extent plaintiff claims employment
discrimination.

    (5)   Defendant Lassen's motion to dismiss plaintiff's FEHA
retaliation, discrimination and harassment claims is
DENIED.

    (6)   Defendant Lassen's motion to dismiss plaintiff's Title
VII hostile work environment and ADA claims is DENIED.

/////

39

1      (7)   Defendant Lassen's motion to dismiss plaintiff's Title
2            VII retaliation claim is DENIED.
3      (8)   Defendants Lassen, Mannel, Bixby, Whiteman and
4            Chapman's motion to dismiss plaintiff's slander claim
5            is DENIED.
6  B.   Plaintiff's motion for leave to amend is:
7      (1)   GRANTED as to her claim of Title VII discrimination in
8            compensation;
9      (2)   GRANTED as to her claim under the Federal Equal Pay
10           Act;
11     (3)   GRANTED as to her claim under the California Equal Pay
12           Act;
13     (4)   GRANTED as to her FEHA discrimination in compensation
14           claim;
15     (5)   GRANTED as to her claim for NIED against defendants
16           Lassen, Mannel, Bixby, Whiteman, and Margolies;
17     (6)   DENIED as to her claim for NIED against defendants
18           Chapman and the Lassen Board of Supervisors;
19     (7)   DENIED as to her claim for conversion of personal
20           property;
21     (8)   GRANTED as to her claim for denial of COBRA benefits.
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

40

1    (9)   Plaintiff shall file and serve her Fourth Amended

2          Complaint within ten (10) days of this order.

3          Defendants shall file their answer within twenty (20)

4          days thereafter.

5    IT IS SO ORDERED.

6  DATED: July 20, 2006.

7

8                                    /s/ Frank C. Damrell Jr.
                                     FRANK C. DAMRELL, Jr.
9                                    UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

41